[No. 1285.]

## THE STATE OF NEVADA, EX REL. JOHN F. ALEXANDER, RELATOR, *v.* F. J. McCULLOUGH, RESPONDENT.

QUO WARRANTO — WHEN LIES — FICTITIOUS CONTROVERSY — APPOINTMENT OF WARDEN OF STATE PRISON.—An information in the nature of *quo warranto*, filed against the incumbent of an office for the sole purpose of having a judicial determination as to who possesses the power of appointment to such office, it being apparent that defendant will remain in office whatever may be the decision, will be dismissed.

Information in the nature of *quo warranto*.

Facts stated in opinion.

*J. F. Alexander*, Attorney General, for Relator.

*T. D. Edwards*, for Respondent.

By the Court, BELKNAP, J.:

On the 23d day of April, 1888, an information in the nature of *quo warranto* was filed in this court, alleging, in substance, that the relator was the attorney general of the state, and *ex officio* a member of the board of state prison commissioners; that among the powers of the board was that to appoint a

warden of the state prison; that, in the exercise of this power, the board had appointed the defendant; that upon the 18th day of April, 1888, it had removed him, but that he had refused, and still refuses, to obey the order of removal, and continues to exercise the functions of the office. Defendant, answering, denies the authority of the board in the premises, and claims title to the office by virtue of an election by the legislature upon the 12th day of January, 1887. No issue of fact is raised by the pleadings. The issue is one of law; the question being whether the power to appoint the warden rests in the legislature or in the board. The parties to the present proceeding endeavored to obtain a judicial determination of this question in a recent proceeding, under circumstances tending to show the object of the present suit. In that case, the information, which was filed on the 2d day of April of the present year, alleged that the board was vested with the authority to appoint a warden, and that defendant had usurped the office. The answer expressly admitted the authority, and set up title to the office by virtue of an appointment by the board. Upon this state of the case, no issue was presented, and the case was therefore dismissed. Afterwards the board of state prison commissioners made the order of removal before mentioned, and instituted the present proceeding.

The fact that the opposing parties upon the record of the previous suit entirely agreed as to the law and facts of the case, and that it was dismissed because no issue was raised, and because an issue was made immediately thereafter by the alleged dismissal of the warden, induced us to inquire of counsel in open court touching the purpose of this suit. The attorney general frankly admitted that defendant was removed for no other reason than to obtain a decision as to the power of the board in the premises; and we infer, from answers made to questions touching the course to be pursued by the board, that it will reappoint defendant, should its power to appoint a warden be affirmed in this proceeding. In other words, whatever may be the result of this litigation, defendant will remain the warden. It is plain that no real dispute exists between the parties. As admitted, the case has been made for the purpose of obtaining the decision of the court upon a question of constitutional law. These facts alone require the dismissal of the case. But the requirement is strengthened, and the proceed-

ing further condemned, by the consideration that a decision upon the merits might be used as a precedent in litigation involving the same question, which may arise whenever the legislature and the board do not agree upon a warden. It would seem that this is the only practical purpose of this suit. If the question should ever arise in the regular course of litigation, the parties interested should have the opportunity of presenting their views unaffected by the present proceeding. Courts uniformly refuse to consider cases brought upon pretended controversies, when the object of the suit is to get the opinion of the court for the benefit of the parties themselves, or to affect the interest of third persons. In *Lord* v. *Veazie*, 8 How. 251, there was a pretended dispute for the purpose of obtaining a decision of the supreme court of the United States settling legal questions involved in a cause then pending in another court. The case was made collusively, and for the purpose of obtaining a judg-. ment upon principles of law prejudicial to third persons interested in the other suit. The court said: "The court is satisfied, upon examining the record in this case, and the affidavits filed in the motion to dismiss, that the contract set out in the pleadings was made for the purpose of instituting this suit, and that there is no real dispute between the plaintiff and the defendant. On the contrary, it is evident that their interest in the question brought here for decision is one and the same, and not adverse; and that in these proceedings the plaintiff and defendant are attempting to procure the opinion of this court upon a question of law in the decision of which they have a common interest *opposed to that of other* persons, who are not parties to this suit, who had no knowledge of it while it was pending in the circuit court, and no opportunity of being heard there in defense of their rights. * * * It is the office of courts of justice to decide the rights of persons and of property when the persons interested cannot adjust them by agreement between themselves, and to do this upon the full hearing of both parties. And any attempt, by a mere colorable dispute, to obtain the opinion of the court upon a question of law which a party desires to know for his own interest or his own purposes, when there is no real and substantial controversy between those who appear as adverse parties to the suit, is an abuse which courts of justice have always reprehended, and treated as punishable contempt of court. The suit is spoken

of, in the affidavits filed in support of it, as an amicable action, and the proceeding defended on that ground. But an amicable action, in the sense in which the words are used in courts of justice, presupposes that there is a real dispute between the parties concerning some matter of right. And in a case of that kind it sometimes happens that, for the purpose of obtaining a decision of the controversy, without incurring needless expense and trouble, they agree to conduct the suit in an amicable manner; that is to say, that they will not embarrass each other with unnecessary forms of technicalities, and will mutually admit facts which they know to be true, and without requiring proof, and will bring the point in dispute before the court for decision, without subjecting each other to unnecessary expense or delay. But there must be an actual controversy and adverse interests. The amity consists in the manner in which it is brought to issue before the court. And such amicable actions, so far from being objects of censure, are always approved and encouraged, because they facilitate greatly the administration of justice between the parties. The objection in the case before us is, not that the proceedings were amicable, but that there is no real conflict of interest between them; that the plaintiff and defendant have the same interest, and that interest adverse and in conflict with the interest of third persons, whose rights would be seriously affected if the question of law was decided in the manner that both of the parties to this suit desire it to be." See, also, *Cleveland* v. *Chamberlain,* 1 Black, 419. In *People* v. *Pratt,* 30 Cal. 223, the relator, an attorney at law, had not obtained a federal license to practice his profession; and, desiring a judicial decision upon the question whether or not the statute requiring the license was constitutional, procured a brother attorney to object to his appearing in court without the license. It appearing that the relator had procured the question to be raised against himself, and that no real dispute existed, the court dismissed the case. The court said: "When questions are presented in good faith, in the regular course of honest litigation, and are necessary to the determination of the case, we shall not hesitate to decide them; but it is no part of our duty to investigate and decide questions not regularly arising in the due course of litigation, for the gratification of the curiosity of counsel, or to serve some ulterior purpose of parties who chose to procure them to be raised

Opinion of the Court—Belknap, J.

against themselves by others who feel no interest in the contest." It is ordered that the information be dismissed.