[No. 1325.]

THOMAS E. HALEY, APPELLANT, v. EUREKA COUNTY BANK ET ALS. RESPONDENTS.

PRACTICE—DEFAULT—PROOF MAY BE REQUIRED BEFORE JUDGMENT.— In all cases, other than those for the recovery of money or damages only, when a default has been entered the plaintiff must apply to the court for the relief prayed for in his complaint, and it is not error for the court to demand additional proof as a condition precedent to. giving judgment.

IDEM—NOTICE OF MOTION TO DISMISS—FICTITIOUS CONTROVERSY.—No notice of motion is necessary before an *amicus curiae* moves to dismiss an action on the ground that it is fictitious and collusive. Whenever facts are placed before a court which cause any suspicion that there is any collusion between the parties, no matter in what way or form the facts are brought to the knowledge of the court, it is the duty of the judge to at once institute such an examination as will satisfy him of the truth or the falsity of the charge.

IDEM—FICTITIOUS SUIT—DISMISSAL ON MOTION.—Defendants purchased property and organized a company, of which they elected plaintiff secretary. Afterwards, to settle their title to the property, they transferred the title thereto to plaintiff, and had him to sue them for its conversion, agreeing in advance to submit to a judgment against them by default, after which plaintiff was to re-transfer to them all of his legal rights to the property. Defendants retained and paid plaintiff's attorney for bringing the suit and plaintiff paid nothing for the property. Plaintiff in course of the suit claimed that it was not fictitious but was hostile to the defendants. *Held*, that on motion of defendant's counsel acting as *amicus curiæ*, and the motion being supported by affidavits, the action was properly dismissed as fictitious.

IDEM—DISMISSAL AFTER ASSIGNMENT OF JUDGMENT BY DEFAULT.—A fictitious suit may be dismissed after the assignment of the judgment. by default, since there could be no rights under such a judgment to assign.

IDEM—PRIVILEGED COMMUNICATIONS.—Communications made to an attorney by parties, when he is acting for them mutually, are not privileged in an action between such parties concerning the subject matter of the communications.

IDEM—DISMISSAL WITHOUT JURY TRIAL.—A party cannot complain on appeal, that without a waiver on his part a jury trial was not allowed him, when the record does not show that he demanded a jury.

Bigelow, J., dissenting.

APPEAL from the District Court of the State of Nevada, Eureka county.

*A. L. Fitzgerald*, District Judge.

The facts sufficiently appear in the opinion, taken in connection with the facts appearing in *Haley* v. *Eureka Bank et als.*, in 20 Nev. 410.

*Wren & Cheney*, for Appellant.

I.   The court erred in denying plaintiff's application for judgment on the pleadings: This action is not governed by the section of the statute relating to the entry of judgments upon failure to answer.   The respondents had filed a general demurrer, and within the meaning of the statute, in reference to judgment by default, the demurrer was an answer.   (*Oliphant* v. *Whitney*, 34 Cal. 27; *Winters* v. *Winters*, 8 Nev. 129, 136.)

II.   The motion for judgment should have been granted, even if the statute in relation to entry of judgments by default is applicable.   A default conclusively admits every material allegation of the complaint and authorizes the court to render any judgment in accordance with the admitted facts.   (*Ewing* v. *Jennings*, 15 Nev. 382; *Burling* v. *Goodman*, 1 Nev. 317; *Hutchings* v. *Ebeler*, 46 Cal. 557; *Himmelmann* v. *Spanagel*, 39 Cal. 401; *Harding* v. *Cowing*, 28 Cal. 212; *Curtis* v. *Herrick*, 14 Cal. 117; *Harlan* v. *Smith*, 6 Cal. 173.)   The allegation of the value of personal property, in an action of conversion, is a material allegation, and is admitted by failure to answer.   (*Hixon* v. *Pixley*, 15 Nev. 475; *Blackie* v. *Cooney*, 8 Nev. 41; *Carlyon* v. *Lannon*, 4 Nev. 156.)   The common law rule that value of property in an action for damages was not a material fact admitted by default has been changed by the code definition of a material allegation.   (Gen. Stat. of Nev. Secs. 3087, 3088; *Tucker* v. *Parks*, 1 Pac. Rep. 427; *Tucker* v. *Parks*, 3 Pac. Rep. 486.)   A finding of damages, based upon an admission of the parties by their pleadings, is no less an assessment than if made upon conflicting evidence.   (*Patterson* v. *Ely*, 19 Cal. 28, 40; *Carlyon* v. *Lannon*, 4 Nev. 160.)   The value of the property is the material fact; the allegation of damages is not essential.   (*Ryan* v. *Hurley*, 119 Ind. 115; *Woods* v. *Berry*, 14 Pac. Rep. 758.)

III.   The court erred in entertaining the motion and dismissing the cause without notice or time being given.   The rule of court was not complied with.   The penalty for a violation of the rule is provided in the rule, viz:   " For a failure to comply

with this rule, the motion shall be denied." (District Court Rule X.)

IV. The court erred in permitting defendant's attorney to appear and make and argue the motion to dismiss in the capacity of *amicus curiæ*. It is not the function of an *amicus curiæ* to take upon himself the management of a cause. (*Taft* v. *Trans. Co.*, 56 N. H. 416.)

V. The court erred in admitting evidence to establish that this action is false, fictitious and fraudulent. It is the law of this case that it is neither false, fictitious nor fraudulent. This court upon the former appeal, considering the appeal upon its merits, evidently determined that the suit was not fictitious.

VI. The court erred in granting the motion to dismiss. The plaintiff has an adverse, older and better title to the property than the defendants. This title is neither false, fictitious nor simulated. It is actual, valid and paramount. Even if the plaintiff is the trustee of defendants, the issue is none the less real, and the suit was certainly not collusive or feigned as to the Eureka Bank. Even if the action in its inception was friendly, there can be no question that it since became far from being collusive or feigned. Motions must be decided upon the case as it exists when the motion is made. Motions to dismiss are no exception. (*Cleveland* v. *Chamberlain*, 1 Black. 419.) What makes a case fictitious, within the meaning of the rule, is that the parties are, by collusion, attempting in advance of any real litigation, to obtain the opinion of the court upon a question of law, which will become a precedent, and thus adjudicate the rights of other parties having interests depending upon the legal question thus sought to be determined. (*State* v. *McCullough*, 20 Nev. 154; *Lord* v. *Veazie*, 8 How. 251; *Cleveland* v. *Chamberlain*, 1 Black. 419; *Bartemeyer* v. *Iowa*, 18 Wall. 129.)

VII. From the testimony of all the parties interested in this action it plainly appears that the only defense that the defendants could make, if the default had been set aside, is that the plaintiff is not the owner of the property or entitled to recover by reason of the means and manner by which he obtained title to the property. Upon that issue the plaintiff is entitled to a trial by jury. We submit, there is neither principle nor precedent which justifies the dismissal of an action as fictitious, when the facts, which it is claimed make the action fictitious, are

controverted. by the adverse party to the action, and constitute the only defense which could be made upon a trial of the action. The court below, in substance, set aside the default and heard and determined the defendant's answer in their favor.

VIII.  It is without precedent for a court to find facts and conclusions of law and enter a judgment upon the merits, upon granting a motion of this nature. (*Gilson Q. M. Co.* v. *Gilson,* 47 Cal. 597; *Wood* v. *Raymond,* 42 Cal. 643.)  The findings are against the facts admitted by the pleadings, and are therefore findings against the evidence, and the judgment entered thereon is erroneous. (*Campe* v. *Lassen,* 67 Cal. 139; *Silvey* v. *Neary,* 59 Cal. 97.)

*Baker & Wines,* for Respondents.

I.  A clerk can enter a judgment by default where the allegations in the complaint must be literally followed, and the exercise of no judgment or discretion is required.   In other actions it is the duty of the plaintiff to apply to the court for the relief demanded in his complaint, and in such cases the court may hear the proof, or it may in its discretion order a reference for that purpose. (*Ballard* v. *Purcell,* 1 Nev. 342.)

II.  The court did not err in dismissing the action, for the reasons stated in its findings of fact and conclusions of law. The authorities are numerous to the effect that it is always proper for any person who is in possession of the facts, which show that an action, apparently *bona fide* and contested in good faith, is simply colorable and simulated, and that the issues involved are feigned issues, and prosecuted for some ulterior motives than those apparent upon the face of the proceedings. (*Brewington* v. *Lowe,* 1 Ind. 23; *Smith* v. *Junction Railway Co.* 29 Ind. 550; *Lord* v. *Veazie,* 8 How. 255, 256; *State* v. *McCullough,* 20 Nev. 154; *Cleveland* v. *Chamberlain,* 1 Blackf. 419; *People* v. *Pratt,* 30 Cal. 223.)

By the Court, MURPHY, J.:

This case came before this court on appeal from an order of the district court, setting aside the default of the defendants. The order was reversed and the cause remanded.  (20 Nev. 410.)

It is unnecessary to repeat the history of the case here.

On the return of the case to the district court, the plaintiff, by his attorney, appeared in court and asked for judgment on the pleadings, for the full amount prayed for in the complaint, no answer having been filed; which motion was by the court denied, on the ground that the plaintiff was not entitled to a judgment without proof of the value of the property alleged to have been converted.

In an action arising upon contract, for the recovery of money or damages only, a default and final judgment may be entered by the clerk. In all other cases the plaintiff must apply to the court for the relief prayed for in his complaint, and when he does so the court may require additional proof, and it is not error for the court to refuse to enter judgment on the pleadings alone, and the proof must be made when demanded. (*Parker* v. *Wardner*, 13 Pac. Rep. 173.)

G. W. Baker, as an officer of the court, and as *amicus curiæ*, submitted a written motion to the court, "to dismiss the action as to all the defendants, except the Eureka County Bank, upon the ground and for the reason that the same was and is a sham action, colorably instituted between the plaintiff and the defendants Sadler, Torre, Barbieri, and the Nevada Stage & Transportation Company, without any intention of ever determining any dispute, or litigating any question, or ever having any adversary trial, but simply to obtain the judgment and decision of the court upon a feigned issue, which might affect other parties not impleaded; and that said action between the parties last above mentioned was amicably instituted, without any real dispute between them, and their interest in the question when the said suit was brought was one and the same, and not adverse. That in these proceedings the plaintiff and said defendants mentioned were seeking to secure such a judgment to be entered as might result to the advantage of the defendants, with reference to the title of the property mentioned in the complaint, and adversely to the interest of other parties not before the court, and who had no knowledge of the suit, and no opportunity to be heard, and have any interest they might have in the subject matter of the suit determined. That the attorney for the plaintiff, who brought the action for the defendants last above mentioned, was employed and paid by them, and such suit was simply a scheme to in some way obtain a judgment of the court upon a feigned issue, which it was conceived might

be of advantage to the defendants, and for which purpose the plaintiff permitted his name to be used in instituting the same." In support of this motion, the *amicus curiæ* offered the affidavits of Sadler and Rives, and it was stipulated between the parties that the testimony taken on the hearing of the motion to open the default, should be considered admitted as evidence on the hearing of this motion, in so far as the same was applicable.

The plaintiff objected to the consideration of the motion, upon the ground that the same had not been noticed.

The court permitted the motion and affidavits to be filed, and informed the plaintiff that he might have all the time he required to prepare counter-affidavits and argue said motion. The plaintiff denied the right of counsel to make the motion, and excepted to the ruling of the court.

The objection of the plaintiff to the filing and hearing of the motion to dismiss, on the ground that the same was not noticed, is without merit: (1) Because upon the reading and filing of the motion the court informed counsel for plaintiff, that they should have all the time they desired to file counter-affidavits and argue the motion, which offer they declined to avail themselves of, but stipulated that the affidavits, submitted to the court on the consideration of the motion to open up the default, on the former hearing of this case, should be admitted as the evidence on this motion, in so far as the same was pertinent to the question submitted for decision. And (2) a motion of this character is in the nature of a suggestion to the court, that the action then pending is not a real, but a fictitious one, to obtain a judgment of the court, not upon any issue then involved between the parties to the action, but that might be used by either the plaintiff or the defendants, against strangers to the action who might thereafter come in and claim an interest in the property sued for.

When actions are brought in a court of law, a duty devolves upon the judge, and that is, scrupulously to guard its proceedings from being used by the parties collusively, and not suffer a judgment to be entered without being fully satisfied that a cause of action really exists, as provided for by law.

Whenever facts are placed before a court, which cause any suspicion that there is any collusion between the parties; no matter in what way or form, the facts are brought to the knowl-

edge of the court, it is the duty of the judge at once to institute
such an examination as will satisfy him of the truth or falsity
of the charge.

There are many circumstances connected with this case,
which certainly give a strange appearance to the mode in which
this action was commenced and has been prosecuted, sufficient,
in our opinion, to sustain the order of dismissal.  It appears
from the uncontradicted testimony that one Townshend had a
contract from the government of the United States for the
transportation of the United States mail from Eureka, in Eu-
reka county, to Pioche, in Lincoln county, all in this state.  He
was in possession of horses, wagons, and harness sufficient to
stock the route.  R. Sadler and John Torre were his bondsmen.
Townshend became indebted to the Eureka County Bank in the
sum of "four thousand eight hundred dollars, to Torre,
Sadler, and Barbieri in the sum of two thousand dollars, and
there was still due to the Utah, Nevada & California Stage Com-
pany the sum of two thousand dollars, balance of purchase
money for the stock on the road; making a total indebtedness
of eight thousand eight hundred dollars."  The Eureka County
Bank, insisting upon the payment of its claim, Townshend, on
the 11th day of March, 1887, sold and delivered to the bank all
the property used in transporting said mail, and his interest in·
the said contract with the government.  That the said Sadler,
Torre, and Barbieri, in order to protect themselves from loss,
upon the failure of the parties to carry said mail in accordance
with the contract for which they were bondsmen, with the
knowledge and consent of Townshend, purchased the property
and contract from the Eureka County Bank, paying therefor
the sum of four thousand eight hundred dollars.  They also
assumed the indebtedness due from Townshend to the Utah,
Nevada & California Stage Company.

That after the purchase of said property by Sadler, Torre,
and Barbieri, they organized the Nevada Stage & Transporta-
tion Company, and they subscribed for and owned all the stock.
That in order to qualify Thomas E. Haley, the parties above
named gratuitously transferred to him twenty-five shares of the
capital stock of said company, and made him secretary thereof.
The Utah, Nevada & California Stage Company, setting up its
claim to the property, R. Sadler purchased all the right, title and
interest of the said Utah, Nevada & California Stage Company,

for himself, Torre, Barbieri and the Nevada Stage and Transportation Company, agreeing to give notes signed by himself, Torre and Barbieri for the sum of two thousand dollars. When the time came for the giving of said notes, Torre was absent from Eureka, and the notes of Sadler, Haley and Jackson were offered in lieu thereof; but the same were not accepted by the company, and they were returned to the makers thereof, and the notes of Sadler, Torre and Barbieri were made, and accepted by the company, and, through the advice of Henry Rives, the title of the Utah, Nevada & California Stage Company was taken in the name of Haley, for the purpose of commencing a suit and clearing the title to the property, which was to be done for the use and benefit of Sadler, Torre and Barbieri, and the Nevada Stage & Transportation Company, but that the said Haley never bargained for, purchased, or paid one dollar for said property, and only received the legal title to said property at the request of Sadler, and with the express understanding and agreement, that he was in all things to be governed by the advice of the said Henry Rives, and that, if a suit was to be instituted, it was to be conducted in a friendly manner, and under the control of the defendants, and in their interests, and, when the title thereto was settled, to convey all of said property to the said Sadler, Torre and Barbieri, or to any person whom they might designate.

This suit was commenced by the plaintiff while he was acting as secretary of a corporation, against the corporation and three of the stockholders. The defendants, Sadler, Torre and Barbieri employed and paid the fees of the attorney for the plaintiff and all the costs of court.

Haley testified, and denied that there was any agreement between himself, Sadler, Torre, and Barbieri, that a judgment should not be taken against the defendants, Sadler, Torre, Barbieri and the Nevada Stage & Transportation Company; or that the suit should be a friendly one, and should inure to the use and benefit of the defendants above named. He admits that Sadler first spoke to him about purchasing the title of the Utah, Nevada & California Stage Company; admits the giving of the notes of Sadler, his own and Jackson's, and the return of them to him; admits that he never paid any money whatever for the property, but says he expected to pay his notes. But they were returned to

him, and Sadler, Torre, and Barbieri gave notes, and paid them as they became due.   They had prior thereto paid the Eureka County Bank the sum of four thousand eight hundred dollars, and had been in possession of all the property.

The evidence was sufficient to satisfy the court that there was collusion between the plaintiff and the three defendants named, and that the action was not commenced for the purpose of settling any real controversy then existing between the parties.

In the case of *Brewington* v. *Lowe*, 1 Ind. 23, the supreme court said:   " We think these proceedings were instituted under a mistaken apprehension of the proper functions of the judiciary. Courts of justice are established to try questions pertaining to the rights of individuals.   An action is the form of a suit given by law for the recovery of that which is one's due, or a legal demand of one's rights.   *   *   *   Indeed, it is well settled that courts will not take cognizance of fictitious suits, instituted merely to obtain judicial opinions upon points of law."

In the case of *Loughead* v. *Bartholomew*, reported in Wright, (Ohio) 91, Lane, J., said:   " Courts are instituted to try questions pertaining to the real interests of individuals; to settle substantial controversies; to preserve the peace of society, and where questions submitted to their action are merely questions of speculation, and where their discussion is *contra bonos mores*, or against public policy, or where the inquiry tends to cast ridicule upon the court, or where the investigation is palpably injurious to the interests or feelings of third persons, without affecting the substantial rights of the litigants, some means will be found to arrest the inquiry."

In the case of *Lord* v. *Veazie*, 8 How. 255, Taney, C. J., said: " It is the office of courts of justice to decide the rights of persons and of property, when the persons interested cannot adjust them by agreement between themselves—and to do this upon the full hearing of both parties.   And any attempt, by a mere colorable dispute, to obtain the opinion of the court upon a question of law which a party desires to know for his own interest or his own purposes, when there is no real and substantial controversy between those who appear as adverse parties to the suit, is an abuse which courts of justice have always reprehended, and treated as punishable contempt of court.   *   *   *   The objection in the case before us is, not

that the proceedings were amicable, but that there is no real conflict of interest between them; and that the plaintiff and defendant have the same interest, and that interest adverse and in conflict with the interest of third persons. * * * A judgment entered under such circumstances, and for such purposes, is a mere form. The whole proceeding was in contempt of the court, and highly reprehensible, and the learned district judge, who was then holding the court, undoubtedly suffered the judgment *pro forma* to be entered under the impression that there was in fact a controversy between the plaintiff and defendant, and that they were proceeding to obtain a decision upon a disputed question of law, in which they had adverse interests. A judgment in form, thus procured, in the eye of the law is no judgment of the court. It is a nullity, and no writ of error will lie upon it. This writ is therefore dismissed."

In *Smith* v. *Railroad Co.*, 29 Ind. 546, a fictitious name was used for plaintiff in the action. The testimony shows that the name of Smith, instead of Reeder, was more by accident than intentional. But the court did not dismiss the appeal on that ground, but that the interests of Reeder and the railroad company were not antagonistic, and the decision was intended to affect thirds persons. (See, also, *Hotchkiss* v. *Jones*, 4 Ind. 260.) The case of *Cleveland* v. *Chamberlain*, 1 Black 425, was a real action. The plaintiff had judgment. Thereafter defendant purchased the plaintiff's judgment, and perfected an appeal to the supreme court. These facts were called to the attention of the court. Mr. Justice Grier said: " This appeal must be dismissed. Selah Chamberlain is, in fact, both appellant and appellee. By the intervention of a friend, he has purchased the debt demanded by Cleveland in his bill, and now carries on a pretended controversy by counsel, chosen and paid by himself, and on a record selected by them, for the evident purpose of obtaining a decision injurious to the rights and interest of third parties."

In the case of *Berks Co.* v. *Jones*, 21 Pa. St. 416, Black, C. J., speaking for the court, said : " Without a doubt, the object of the proceeding was not to settle a real dispute, but merely to ascertain the law; in other words, to make the court act as counsel for the commissioners. But they have no right to get advice in this way. Courts ought to encourge amicable submissions of real disputes, but people have no right to pro-

pound abstract questions to them.   For this there is not only
the clearest reason, but the highest authority.   *   *   *   The
judge of the common pleas, overindulgent to the parties, de-
cided the law for them, when he might have stricken the case
from the record.   With an easy good nature, equally inexcus-
able, we have done the same thing.   We have considered the
subject with as much care as if it had been regularly before us;
and we unanimously agree in pronouncing the opinion of the
court below to be a perfectly sound exposition of the law.   'But
because there was nothing on which a judgment could be en-
tered, the writ of error must be quashed." (*Pittsburg* v. *Al-
legheny*, 1 Pitts, R. 99.)

In the case of *Meeker* v. *Stratt*, 38 Mo. App. 243, the supreme
court said:  " This decree cannot stand.   Suits contemplate
adversary parties, although amicable suits may be brought to
determine the respective rights of the party thereto.   When a
suit is brought with a view of affecting the rights of third
parties, and it is apparent that that is its sole object, the suit
ceases to be adversary, and becomes collusive.   No court should
lend its aid to such a proceeding, least of all a court of equity.
*   *   *   All these considerations lead to the inevitable conclu-
sion that the decree in the present case was unwarranted by the
law and the evidence, and that the trial court instead of render-
ing a decree for plaintiff should have dismissed her bill.   Judg-
ment reversed and bill dismissed."

Courts of justice are established for the purpose of deciding
really existing questions of right between parties who, in good
faith, submit a case to the court for a decision, and the court
should not try an action upon a feigned issue, or an abstract
question of law, or judicial practice, not arising out of circum-
stances really existing, in which the parties have a legal inter-
est.   An action is a legal prosecution by a party complainant,
against a party defendant, to obtain the judgment of the court in
relation to some rights claimed to be secured, or some remedy
claimed to be given by law to the party complaining.   It is
given by law, for the recovery of that which is one's due, or a
legal demand of one's rights.

From the evidence in this case, we are satisfied that, at the
time of commencing this action, the plaintiff had no legal
demand against the defendants, and they did not infringe upon
any of the plaintiff's rights in relation to the property in con-

troversy; that the action was commenced by the plaintiff as the agent and trustee of the defendants, and his denial "that there was no agreement between himself and Sadler that no judgment should be taken against Sadler, Torre, Barbieri, or the Nevada Stage & Transportation Company," need occupy but little attention, as all the circumstances connected with the purchase and possession of the property, as well as the affidavits of Rives, Sadler and Torre, in support of the motion to dismiss, clearly show that plaintiff had agreed to and was holding the bill of sale of the property in trust for the defendants named, and for their use and benefit, and for the purpose of protecting their title to the property, and, as they supposed, to prevent Townshend from asserting any claim to the property, under an agreement entered into by Townshend on the one part, and Sadler, Torre and Barbieri on the second part, wherein they covenanted and agreed, "that immediately upon the receipt by us of all moneys which we have agreed to pay said Eureka County Bank, and all money now due us from W. J. Townshend, together with all which we may hereafter have to pay out in order to conduct said stage line, and upon our being secured from loss by reason of our being sureties upon the mail contract bonds of said W. J. Townshend, we will transfer and set over unto said Townshend, or his order, all of said property connected with said lines which we may acquire in connection with the conduct of said lines, and which we may charge as having been necessarily purchased in the conducting of said lines and business. It is also understood and agreed that, in case we have to pay interest, and any money, to the Utah, Nevada & California Stage Company, in order to carry on said stage lines, or to retain possession of the property hereinbefore mentioned as having been transferred to us, this agreement to reconvey shall become operative until such interest and payment to said Utah, Nevada & California Stage Company shall be repaid to us;" and, as was said in the case of *Lord* v. *Veazie, supra,* any judgment, entered under the above state of facts, would be a nullity; and a right of action must be complete before the suit is brought, and no subsequent occurrence of a material fact will avail the plaintiff in maintaining the suit. (*Moore* v. *Maple,* 25 Ill. 343.) Therefore the assignment of the judgment by Haley to Ahern did not change the condition of things as to the fictitiousness of the action

when commenced. There could be no rights, under such a judgment, to assign.

The plaintiff also objected to the reading of the affidavit of Rives, for the reason that the same was incompetent, irrelevant, and immaterial, and discloses information which was obtained when he was acting as attorney for the plaintiff, and discloses privileged communications between attorney and client, and that it attempts to prove facts contrary to the admitted allegations of the complaint. It did not disclose privileged communications. Some of the statements made by him were in the nature of communications received while acting as the agent and attorney for the defendants in the purchase of the property from the Eureka County Bank, Townshend, and the Utah, Nevada & California Stage Company, and conversations had by Haley and Sadler, in the presence and hearing of Rives; and such statements are not privileged, when the action is between the parties to the conversation. (*Michael* v. *Foil*, 6 S. E. Rep. 264.) Where an attorney was acting for both plaintiff and defendant in drawing a contract for them to sign, communications of the parties to such attorney are not confidential. (*Appeal of Goodwin Gas-Stove & M. Co.*, 12 Atl. Rep. 736; *Griffin* v. *Griffin*, 17 N. E. Rep. 782; *Hurlburt* v. *Hurlburt*, 2 N. Y. Supp. 317.)

In the case of *Bauer's Estate*, reported in 21 Pac. Rep. 762, the supreme court of California said: "When two persons address a lawyer as their common agent, their communications to the lawyer, as far as concerns strangers, will be privileged, but as to themselves they stand on the same footing as to the lawyer, and either can compel him to testify against the other as to their negotiations." The appellant claims: "That the court erred in granting said motion to dismiss, and in entering said judgment, for the reason that no jury was ever waived in this action." An answer to that objection is, that a jury was not demanded, and by the silence of the plaintiff he waived his right thereto if any he had.

In the case of *Sheets* v. *Bray*, 24 N. E. Rep. 358, the supreme court of Indiana said: "We have been unable to find any bill of exceptions in the record showing a request on the part of appellants for a jury trial, and a refusal and exception thereto, nor is any such bill referred to by counsel in their brief. In the absence of such request, the right to a trial by jury, if such

right existed in this case, must be regarded as waived." (*Grant* v. *Hughes*, 2 S. E. Rep. 345.)

The objection of the plaintiff to G W. Baker, as *amicus curiæ*, making the motion to dismiss the action, is without merit. In the earlier English cases, we find that any stranger as *amicus curiæ* may move the court of matters apparent in the writ, and the court *ex-officio* is bound to abate the writ if it be vicious, for false Latin or default of form, or that the one plea goes to the whole, and the court will discharge all others; or may move to quash an indictment apparently vicious, be the crime what it will; and a party was permitted to state in court that he was present at the making of the statute, and what was the intention of parliament in enacting the law; and, if an action be abated, any one may move to have the verdict set aside, even the defendant himself. (2 Vin. Abr. 175.) If a judge be doubtful, or mistaken in a matter of law, a stander-by may inform the court, as *amicus curiæ*. In some cases, a thing is to be made apparent by suggestion; on the roll, by motion; sometimes by pleadings, and sometimes as *amicus curiæ*. (Tayl. L. Gl. 43, and 29 Ind., supra.)

In the case of *Ex-parte Randolph*, 2 Brock. 454, Mr. Nichols appeared as *amicus curiæ* at the request of the court, and argued the question therein pending And in *Ex-parte Yeager*, 11 Grat. 656, where the petitioner had made application for a license to keep a public house, Fry, who was counsel in a similar action, was permitted to appear as *amicus curiæ*, and argue against granting the same.

In the case of *People* v. *Gibbs*, reported in ; 8 N. W. Rep. 258, " Thompson asked permission of the court to assist in the prosecution of the case, he having theretofore had something to do with the prosecution, but his request was denied. Thompson then suggested to the court that the defendant be required to plead to the information. Counsel for the defendant objected to Thompson addressing the court, the objection was overruled, and the defendant required to plead." On appeal, the supreme court said: " The suggestion of Thompson was one which might very properly have been made as *amicus curiæ*, by any member of the bar." The court may, and often does, of its own motion, ask of counsel information upon a point in doubt, or in relation to the merits of the case on trial. (*State* v. *McCullough*, 20 Nev. 154.)

It is not only the right, but the duty, of an attorney of the court, if he knows or has reason to believe that the time of the court is being taken up by the trial of a feigned issue, to so inform the judge thereof; and it is discretionary with the court to stay proceedings, make due inquiry, and if the facts warrant the suggestion, then dismiss the case.

The judgment of dismissal is affirmed.

BIGELOW, J., dissenting:

In the verified complaint filed in this action the plaintiff alleges that he is the owner and entitled to the possession of certain personal property of the value of six thousand two hundred dollars, which the defendants have unlawfully taken from him and converted to their own use. The defendants demurred; their demurrer was overruled; and, all but the bank failing to answer, their default was entered. Subsequently, upon their motion, the default was set aside by the district court, but upon appeal to this court (20 Nev. 426), the order was reversed. Upon the return of the case to the district court for further proceedings upon the default, on motion of the defendants' attorney, G. W. Baker, acting as *amicus curiæ*, the action was dismissed, upon the ground that it was collusive and fictitious.

It is agreed that the property originally belonged to the Utah, Nevada & California Stage Company. One Townshend was in possession of it under a contract of purchase, the company retaining title until it was paid for. The defendants were sureties upon a certain bond for Townshend. and he was also indebted to them. Becoming involved, he transferred the property to the Eureka Bank, to which he was also indebted. The defendants paid the bank the amount due it, and took possession of the property, under an agreement with Townshend that when they were indemnified upon the bond, and repaid the money advanced upon the property and the amount then owing them, it was to revert to him.

The defendants' evidence upon the motion tends further to prove that the stage company, demanding payment of the balance due it, was also paid by the defendants, but the legal title to the property was taken in the name of the plaintiff, under an agreement that he was to hold it in trust for them; that it was further agreed that the plaintiff should bring this action, obtain judgment against the defendants, and sell the property out in

their interest. This, of course, vested the legal title in him, but as a trustee for the defendants, other than the bank. On the other hand, the plaintiff denies this, and upon the hearing of the motion testified that he bought the property for his own purposes, paid for it with his notes, and that there was no agreement or understanding that he should hold it in trust, or in any manner, for the defendants.

Under these circumstances, I shall not investigate the evi_ dence to determine whether the plaintiff's or the defendants' contention is the better supported by it. In my judgment the principles asserted in *Lord* v. *Veazie,* 8 How. 251, and similar cases concerning fictitious actions, have no application here.

Taking the broadest and most charitable view of the defendants' case as presented upon the motion, it appeared that the plaintiff alleged by his verified complaint that he was the owner and entitled to the possession of the property; the defendants admit that he holds the legal title, but claim that it is only in trust for them, and consequently that he is not, as against them, entitled to its possession, nor to recover its value. The burden of showing this is, of course, upon them.

This is the ordinary situation in a contested lawsuit: The plaintiff asserts a right which the defendant denies. Under such circumstances, it has heretofore been supposed that the parties are entitled to a regular trial, either with or without a jury, as they may elect, to determine whether this right exists or not. This is perhaps the first time where, in advance of the trial, against the protests of one of the parties, the case has been taken up, the evidence heard and the merits of the action decided upon a simple motion, decided, too, against a plaintiff whose evidence made at least a *prima facie* case, such a case as would have prevented a non-suit upon a trial. Unquestionably, before it could be determined that the action was collusive, it was necessary to decide the very point in dispute between the parties; that is, that the plaintiff was holding the title to the property in trust for the defendants. If he was not, if, as he alleged and testified, it was absolutely his, and they were wrongfully detaining it from him, then there was no collusion in commencing the action, nor in maintaining it. In determing this point against him, the court decided in the defendants' favor the only defense they could possibly have made, had they been allowed to answer.

Usually, after a claim legal upon its face is sufficiently stated in a complaint, and the defendant has lost the right to make any defense, judgment goes against him as a matter of course. But here, after this right had been lost, the defendants were allowed upon a mere motion to make their whole defense, and in a much more expeditious manner than they could had they been permitted to answer. I say the defendants were allowed, because the proposition that Mr. Baker, who had been their attorney through all these years of litigation, made this motion, not in their interest, but as an *amicus curiæ*—a friend of the court—is too transparent for sober consideration.

2. If the transaction was just what the defendants claim it to have been; if the plaintiff took the title to the property in trust for the defendants, and commenced the action in their interest, it also appears clearly enough that this was done for the purpose of obtaining some unfair advantage of Townshend or his creditors. It is hard to determine just what their ideas were, owing probably, to the fact that they themselves did not have a clear perception of them, but it is safe to say that men do not resort to such crooked methods for honest purposes. The bill of sale vesting the legal title to the property in the plaintiff, was, in my judgment, under the circumstances, equivalent to the deed in *Peterson* v. *Brown*, 17 Nev. 175, and brings the case directly within the principles there laid down. In the attempt to overreach some one else, through the treachery of their confederate, they have been caught in their own trap, and neither law nor justice calls upon the courts to interfere in their behalf. Why this should be the rule has been so clearly and fully stated in the last-mentioned case, that I refrain from saying more concerning it.

A fictitious case is one where, without there being any real litigation between the parties, a pretended case is presented in which it is sought to obtain an authoritative decision of some point of law that will, as a precedent, determine the rights of others, who may have a real controversy with the parties to this collusive proceeding. This constitutes a fraud upon the third persons as well as upon the court, because it is highly probable that only one side will be properly presented or argued, and consequently that a biased decision will be rendered that will affect their rights, without their being heard. This is not that kind of a case. There is no question of law to

be decided here, nor, whatever may have been the purpose in the beginning, will the result affect any third person. This is a case of attempted fraud, where the parties to the attempt, after going a certain length, and after, perhaps, reaping all the benefits they expected from their acts, have fallen out, the same as they did in *Peterson* v. *Brown,* and now the defendants are trying to relieve themselves from a position which they have voluntarily assumed, by showing that the bill of sale was not made, and the action based thereon was not brought, *bona fide,* but for the purpose of deceiving and overreaching others. To permit them to do this is to allow them to plead their own fraud in avoidance of the consequences of their acts.

Of course, the plaintiff did not demand a jury trial upon the hearing of the motion; he would not have been entitled to it, if he had; for juries are not called to decide motions. Upon this point the error of the court consists in hearing and deciding, upon a mere motion, the entire merits of the action, without a trial of any kind, either with or without a jury. I think the judgment should be reversed.