## GATES v. COLUMBIA-KNICKERBOCKER TRUST CO.*

(Circuit Court of Appeals, Ninth Circuit.    May 29, 1916.)

### No. 2690.

1. STATUTES ⬅226—CONSTRUCTION—INTERPRETATION.

In construing a statute adopted from another state, the decisions of that state may be considered.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 307; Dec. Dig. ⬅226.]

---

2. Attorney and Client ⬤⟼175—Rights of Attorney—"Action."
      Rev. Laws Nev. § 5376, gives an attorney a lien upon his client's
   cause of action, or counterclaim, attaching to a decision, or judgment in
   his client's favor, and the proceeds thereof. In proceedings before the
   General Land Office in the Department of the Interior, an attorney
   represented a corporation, which resulted in its obtaining title to 480
   acres of land. *Held* that, as the statute refers only to an "action," which
   is a legal prosecution by a party complainant against a party defendant
   to obtain the judgment of the court in relation to some rights claimed to
   be secured or some remedy claimed to be given by law to the party com-
   plaining, plaintiff has no lien on such land, particularly as there was not
   even a formal contest in the Department of the Interior; such pro-
   ceeding not being an action.
      [Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§
   394–398; Dec. Dig. ⬤⟼175.
      For other definitions, see Words and Phrases, First and Second Series,
   Action.]

Appeal from the District Court of the United States for the Dis-
trict of Nevada; E. S. Farrington, Judge.

Bill in equity by Joseph Gutman and others against the Pacific
Reclamation Company, in which R. Woodland Gates filed a bill of
intervention, and the Columbia-Knickerbocker Trust Company also in-
tervened and prayed dismissal of bill by Gates. From an order dis-
missing the bill of intervener Gates, he appeals. Affirmed.

Sweeney & Morehouse and William W. Griffin, all of Carson City,
Nev., and Theodore A. Bell, of San Francisco, Cal., for appellant.

Gifford, Hobbs & Beard, of New York City, and Dey, Hoppaugh &
Fabian, of Salt Lake City, Utah (A. L. Hoppaugh and Charles C. Dey,
both of Salt Lake City, Utah, of counsel), for appellee.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

HUNT, Circuit Judge. In March, 1913, Joseph Gutman and oth-
ers, creditors, filed a suit against the Pacific Reclamation Company,
a Nevada corporation, asking that a receiver be appointed, the prop-
erty sold, and the proceeds distributed among those entitled thereto.
The Pacific Reclamation Company admitted the facts set forth in
the bill of complaint and joined in the request for the appointment of
a receiver. George M. Bacon was appointed receiver, and duly quali-
fied as such.

In his amended bill of intervention, Gates, the appellant here, al-
leged, in substance, that between August 18, 1911, and March 1, 1913,
he performed services as attorney and counselor at law for the Pacific
Reclamation Company at its request in prosecuting certain suits in the
General Land Office and the Department of the Interior, in counseling
and advising the Reclamation Company, and in attending in and about
its business in respect to relinquishments of certain lands, location
of lands, and land matters involving hearings before, and conferences
with, the Department of the Interior and certain officials; that in some
of the land matters adverse decisions had been rendered by the Com-
missioner of the General Land Office, and appeals were taken to the
Secretary of the Interior; and that valuable lands were saved through
appellant's efforts. He estimated his services as reasonably worth

$25,000, and alleged that, under and pursuant to paragraph 5376 of the Revised Laws of Nevada (1912), he had a lien in that sum upon and against the 480 acres of certain land owned by the Pacific Reclamation Company, and which became part of its assets by the efforts of appellant; his services having been rendered upon an agreement with the Pacific Reclamation Company to pay a reasonable sum for his services rendered in the Interior Department. His prayer is for a judgment for that amount against the Reclamation Company, and that he be decreed to have a lien on the 480 acres of land.

Intervener alleged that the Pacific Reclamation Company, in December, 1909, by deed of trust, mortgaged all its property in Elko county, Nev., to the Columbia Trust Company, but that when such deed of trust was made the Pacific Reclamation Company did not own certain lands (480 acres) which it later obtained through the efforts of this appellant, and that the claims of the Columbia Trust Company are subsequent to the lien of this appellant in the 480 acres of land just referred to.

The Columbia-Knickerbocker Trust Company, also an intervener below, appellee here, moved to dismiss the bill for lack of equity, and to strike out those special portions wherein a lien was claimed. The court dismissed the bill, and appeal was taken.

[1, 2] Appellant contends that the statute of Nevada (section 5376, Revised Laws of Nevada) gives him a lien. We quote the section:

"The compensation of an attorney and counselor for his services is governed by agreement, express or implied, which is not restrained by law. From the commencement of an action, or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action or counterclaim which attaches to a verdict, report, decision, or judgment in his client's favor and the proceeds thereof in whosever hands they may come, and cannot be affected by any settlement between the parties before or after judgment. There shall be allowed to the prevailing party in any action, or special proceeding in the nature of an action, in the Supreme Court and district courts, his costs and necessary disbursements in the action or special proceeding."

The premise that appellant performed valuable services for the appellee in matters before the General Land Office in the Department of the Interior, which resulted in obtaining title to 480 acres for the corporation, is to be accepted; and, in a general sense, it is correct to say that in the disposition of public lands the Interior Department is a quasi judicial tribunal, and that land officials 'in their decisions act in a quasi judicial capacity. And we will take it that through appellant's efforts in the Interior Department, the property of the Reclamation Company was enriched by the addition of the 480 acres specially adverted to by appellant. But, notwithstanding these assumptions, we can find no ground for sustaining appellant's claim of lien. The statute of Nevada, supra, giving to the attorney who appears "a lien upon his client's cause of action or counterclaim which attaches to a verdict, report, decision or judgment in his client's favor, and the proceeds thereof, in whosever hands they may come," etc., presupposes that "an action" has been commenced and that the attorney claiming the lien has appeared. "From the commencement of an action" the attorney who appears has "a lien upon his client's cause of action or

counterclaim." This may be called the conferring language of the statute. If the lien is found to exist, it attaches to "a verdict, report, decision or judgment" in the client's favor, and the proceeds thereof, in whosever hands they may come, and cannot be affected "by any settlement between the parties before or after judgment." This may be described as the reach of the lien. The statute applies in protection of attorneys who appear for parties in actions commenced in the jurisdiction of Nevada. An action means the ordinary legal and formal demand of one's rights from another person, made and insisted on in a court of justice. Black in his Law Dictionary cites the definition of an action given in the Supreme Court of Nevada in Haley v. Eureka County Bank et al., 21 Nev. 127, 26 Pac. 64, 12 L. R. A. 815, where it was said:

"An action is a legal prosecution by a party complainant, against a party defendant, to obtain the judgment of the court in relation to some rights claimed to be secured, or some remedy claimed to be given, by law to the party complaining."

By no fair construction can a proceeding affecting public lands in the Interior Department of the United States, not even a formal contest in that Department, be regarded as an action commenced within the meaning of the Nevada statute. We agree with Judge Farrington, who said:

"The reference is to civil actions only. The statute quoted is a part of the Civil Practice Act, which elsewhere (Rev. Laws, §§ 4943, 4944) states there shall be in this state (Nevada) but one form of civil action for the enforcement-wrongs. In such action the party complaining shall be known as the plaintiff, and the adverse party as the defendant."

The statute of Nevada, already quoted, was evidently taken from New York, where prior to 1899 there was the same provision respecting liens of attorneys. Hence we may turn to the decisions in that state to aid in interpretation. In Schreyer v. Deering, 30 App. Div. 602, 52 N. Y. Supp. 203, an attorney claimed a lien on a judgment in condemnation proceedings had before commissioners, but the court held that the lien applied only to causes of action to enforce which an action had been commenced, or to recover which an answer containing a counterclaim had been served. In the recent case of Morey et al. v. Schuster et al., 159 App. Div. 602, 145 N. Y. Supp. 258, it was held that attorneys employed to procure legislation authorizing the commissioners of the land office to convey land to the holder of a certificate of sale without further payment therefor, and to secure the issuance of a patent by the land office, had no lien on the land for their services under chapter 30, section 475, of the Consolidated Laws of 1909, which provides that from the commencement of an action or special proceeding, or the service of an answer containing a counterclaim, an attorney has a lien upon his client's cause of action, claim, or counterclaim, which attaches to a verdict, report, decision, judgment, or final order in his client's favor, and the proceeds thereof. And with respect to the possible claim of a lien for services independently of any statutory provision, the court said:

"It is doubtless true that, independently of any statutory provision, plaintiffs would be entitled to an attorney's retaining lien for the value of such services, provided there was anything belonging to the defendants, which had come to plaintiffs' possession or control in their professional capacity.    Matter of Knapp, 85 N. Y. 284; Ward v. Craig, 87 N. Y. 550.    But here there is nothing.    Neither is their any 'verdict, report, decision, judgment,' or 'final order in the client's favor' or 'proceeds thereof' bringing the claim within the equitable control of the court under the statute.    It is only, as the statute provides, 'from the commencement of an action or special proceeding, or the service of an answer containing a counterclaim,' that the statutory lien of an attorney attaches.    These services did not, and in the nature of things could not, involve the expressed prerequisite to such a lien of either the commencement of an action or special proceeding or the service of an answer containing a counterclaim.    It is true that these services in completing and perfecting defendants' title to the premises were performed while the ejectment action was still in its final issue undetermined.    But these services were to an end distinct and separate from the conduct of the ejectment action, the result of which was in no way dependent upon their success or failure."

In Goodrich v. McDonald et al., 112 N. Y. 162, 19 N. E. 651, decided by the Court of Appeals of New York in 1889, when the statute of New York was like the statute of Nevada, the court held that attorneys had two kinds of liens peculiar to them in their relations with their clients:

"One is a lien which an attorney has upon all the papers of his client in his possession, by virtue of which he may retain all such papers until his claim for services has been discharged.    That in the books is called a 'retaining lien.'    An attorney also has a lien upon the fund, or judgment which he has recovered, for his compensation as attorney in recovering the fund or judgment, and that is denominated a 'charging lien.'"

Judge Earl, for the court, reviews the English and earlier American decisions, and writes of the peculiarity of an attorney's lien, saying, however, that after a careful search they could not find that an attorney could enforce his lien upon a judgment for his services by an equitable action, or where he has been permitted to follow the proceeds of a judgment after payment of them to his client.

"His lien," said the court, "is upon the judgment, and the courts will enforce that through the control it has of the judgment and its own records, and by means of its own process, which may be employed to enforce the judgment. But after the money recovered has been paid to his client he has no lien upon that, and much less a lien upon property purchased with that money, and transferred to another.    After such payment, unless he has protected his lien by notice to the judgment debtor, his lien is forever gone, and he must look to his client alone for his compensation."

Under the rule of the New York cases, when by acquiescence of the attorney the money recovered has been paid to the client, or the client has received property in satisfaction of the judgment, the attorney cannot enforce his lien against such money or property, but must look to the client alone for his compensation.    We conclude that there is no statutory lien; nor does appellant make a showing from which it is to be inferred that it was the purpose of the parties interested to create a lien of any kind upon the 480 acres involved in the proceedings before the Interior Department.

Central Railroad, etc., Co. v. Pettus, 113 U. S. 116, 5 Sup. Ct. 387, 28 L. Ed. 915, cited by the appellant, does not conflict with the doc-

trine of the New York decisions, for the Supreme Court says that the attorney's lien there prayed for was given by the law of Alabama, by which the question was determined. We have examined the other cases cited by the appellant and find nothing to justify a departure from the rule laid down by the District Court.

The order appealed from is affirmed.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes