# ALEXANDER NEWMAN *v.* MARY STOCKER.
## [No. 53, October Term, 1931.]

*Decided January 13th, 1932.*

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, PARKE, and SLOAN, JJ.

*G. Randolph Aiken* and *Joshua Clayton,* for the appellant.

*Harold E. Cobourn,* for the appellee.

BOND, C. J., delivered the opinion of the Court.

The appellee has recovered a judgment for damages from injuries alleged to have been sustained while she was riding as a guest in the appellant's automobile, driven by him, and on the appeal it is contended that there was error in rulings on evidence and on prayers for instructions.

On August 23rd, 1930, early in the evening, the plaintiff and her husband, and the defendant and his wife, after having dined together in Baltimore, drove together in Newman's automobile toward Perry Point, where the Newmans lived. There was evidence that Newman maintained a high rate of speed as he drove, too high, in the opinion of the plaintiff's husband, and such that the husband was moved to suggest that it be reduced; but none of the witnesses say that the speed was above the legal limit, or that it caused the accident

in which the plaintiff was injured. In the brief filed for the plaintiff, or appellee, negligence in driving at an excessive rate of speed is, indeed, disclaimed. As the automobile neared Aberdeen, at about dusk, when automobile lamps were lighted, Newman, according to the evidence, glanced around toward his wife, who was sitting in the rear of the plaintiff, to speak of the smooth driving of the car over a stretch of rough road, and as he turned, or shortly after he turned, to face forward, his car was swerved to the side of the road so that his wheels dropped into soft earth, the car seemed to increase its speed suddenly, and it collided with a telephone pole, causing the plaintiff's injury. The defendant testified that he kept his head to the front as he looked around to speak to his wife, and that at about the time he looked around and forward, he saw an automobile only thirty feet ahead, in a line of automobiles coming toward him on the other side of the road, turn its lights out of the line and toward the defendant on his side, as if starting out to pass automobiles in the line ahead of it, and that, faced with what appeared to be a sudden danger of collision, he swerved quickly to avoid it, dropped off the hard surface, and ran with accelerated speed into the pole. The acceleration of his speed, he thought, must have been due to his putting his foot on his accelerator instead of on his brake, in his hurry. The plaintiff's witnesses stated that they did not notice the threat from the car coming toward them, or did not see what caused the defendant to swerve. In argument, it was contended for the plaintiff that the cause of the swerving and dropping into soft earth was the defendant's turning to speak to his wife. This, however, is not directly stated in the testimony, and the cause was left to more or less plausible conjecture except for the defendant's explanation.

For the defendant, it was prayed that a verdict might be directed in his favor on the ground that the evidence was legally insufficient to prove any negligence on his part in meeting the emergency he described, and on the ground that the plaintiff was herself guilty of negligence which contrib-

uted to the accident. But as to the first ground, it seems sufficient to point out that the existence of the emergency was not admitted, and therefore could be established only by a finding of the jury. And if the jury should find the emergency to have caused the swerving from the hard surface of the road, they might still, we think, conclude that the subsequent acceleration of the speed of the car, to which the defendant testified, was a mistake which a driver exercising due care would not have made, and was the cause of the collision with the pole. And in the sudden occurrence which the witnesses agree in describing, there was no opportunity for the plaintiff to be guilty of contributory negligence. *Montgomery Bus Lines v. Diehl,* 158 Md. 233, 238, 148 A. 453. We concur therefore in the refusal of the defendant's prayers for direction of a verdict in his favor.

There are eight exceptions to rulings on the admission of evidence. The first three were to defendant's questions to the plaintiff on cross-examination, on the allegation that the accident had occurred while the defendant was driving in a reckless, careless, and negligent manner. After she had stated that the automobile was being driven at a pretty good rate of speed, and that she did not notice any particular change of speed, she was asked specifically whether in other words she would say that the car was driven in a reckless manner, or as one usually drives along a highway or country road; and the three questions on these tests of driving were all excluded. And then, in answering a question, "In what way," the car was driven, she said it was driven at a pretty good rate of speed, but she could not say it was reckless, because she did not think it was; and this estimate of the speed was, upon objection of the plaintiff's counsel, stricken out, and a fourth exception was taken to that action. The argument for the exclusion is that in all this testimony only impressions, without facts, were sought. But while that may be a just criticism of the mere statement that the driving was or was not reckless, it would seem to be inapplicable to testimony that the driving was at a speed at which one usually drives along a highway or a country road. The defect which in the opinion

556

of this court lies in that evidence is its lack of definite standard of comparison for the jury's information. Because of this lack, no error is found in the exclusion.

A sixth exception to the exclusion of a question to the defendant by his counsel, whether he could account for his foot's missing the brake and getting on the gas, appears to be met by the fact that the defendant did explain in evidence, shortly after the exclusion of the question, that the reason he said he must have put his foot on the gas when the car left the hard surface was that the speed of the car increased. This seems clearly to mean that his statement was an inference from the fact that the speed increased and that the action was an unconscious mistake; and it seems to answer fully the question excluded. We think the question was a proper one, but that any error in its exclusion was remedied by the answer subsequently given.

The seventh and eighth exceptions were to the exclusion of supposed contradictory statements made by the defendant in writing, before trial, to representatives of an insurance company, and offered in evidence on behalf of that company. After some questions as to the cause of the accident had been answered by the defendant on his examination in chief, counsel who were conducting the defense announced that they had been retained by an insurance company which had insurance on the defendant's automobile, and obligated itself to defend the insured in accordance with the terms of its policy; that the defendant on his side obligated himself to co-operate in the defense; that he had given the insurer after the accident statements now exhibited to the court which were at variance with his present testimony; and that the insurer believed that collusion between the parties existed; and the insurer asked that the previous statement might be received in evidence and read to the jury, because of the surprise growing out of the testimony given on the trial. It is urged in argument that justice obviously requires that an opportunity be given to show fraud and collusion of parties in bringing or maintaining a suit without controversy between them, and for its effect on a third person such as an insurer, and that if the

ruling of the lower court should be correct, injustice and wrong might in many cases, increasing in number with the extension of the use of motor vehicle insurance under the provisions of the Act of 1931, ch. 498, be perpetrated without defense by the insurers. But we see no obstacle to full correction of such collusion, if it can be shown, and so far the insurer has not been denied any right or defense based upon that ground. The action it takes is untimely. It is not a proceeding for dismissal of the suit as a collusive one. Such a proceeding when taken would not be a step in the course of the suit, looking to its decision, but it would be collateral, looking to the prevention of any further maintenance of the suit. *Lord v. Veazie,* 8 How. 251, 12 L. Ed. 1067; *American Wood Paper Co. v. Heft,* 8 Wall. 333, 19 L. Ed. 379; *Bell & Howell Co. v. Bliss* (C. C. A.), 262 F. 131, 134; *Matter of Elsam,* 2 Barn. & Cres. 597; *Ward v. Alsup,* 100 Tenn. 619, 46 S. W. 573; *Smith v. Junction R. Co.,* 29 Ind. 546; *Haley v. Eureka County Bank,* 21 Nev. 127, 26 P. 64; *Muskogee Gas Co. v. Haskell,* 38 Okl. 358, 132 P. 1098; *McAdam v. People,* 179 Ill. 316, 53 N. E. 1102. Counsel here did not request dismissal, or even that the possibility of collusion be investigated with a view to dismissal. They acquiesced in proceeding with the trial, and, in the course of the trial, aiming only at an ultimate verdict for the defendant, they sought the introduction of evidence to discredit testimony of the defendant, and possibly of witnesses for the plaintiff. And that effort is open to the objection made, that it is the effort of a party to discredit his own present testimony. Only another party, treating this defendant as a witness, could be permitted to introduce the contradictory evidence; and the insurer is not a party in this suit, even though it may have employed counsel to defend the suit, having regard to its undertaking to indemnify the defendant. Its liability to the defendant on a policy of insurance is not being adjudicated in the suit; the only adjudication possible is that upon the liability of the present defendant to the present plaintiff. A new claim thereafter, and, if it is resisted, a new suit, would be necessary to adjudicate the liability on the policy. And it

would be in that new suit that the insurer would appropriately make the defense on the ground that the insured seeks indemnity for loss from collusive agreement rather than from the liability imposed by law which is the subject of insurance, or on the ground that in violation of a term of the policy the insured has failed to co-operate in the defense, or on any other ground. *United States Fidelity & Guar. Co. v. Williams,* 148 Md. 289, 129 A. 660. We find no error therefore in the rulings on the offer made the subjects of the seventh and eighth exceptions.

The appellant does not in this court contend that there were errors in any rulings other than those already considered, and we see none.

*Judgment affirmed, with costs to the appellee.*