109 So.2d 418 (1959)
Angeline SPADARO, as ancillary executrix of the estate of Samuel Spadaro, deceased, Appellant,
v.
Ralph PALMISANO, Appellee.
Angeline SPADARO, as ancillary executrix of the estate of Samuel Spadaro, deceased, Appellant,
v.
GULF OIL CORPORATION, a corporation organized and existing under the laws of the State of Pennsylvainia, Appellee.
Nos. 58-260, 58-261.
District Court of Appeal of Florida. Third District.
March 5, 1959.
Rehearing Denied March 20, 1959.
*419 Brown, Brown, Corcoran & Henson, Tampa; Scott, McCarthy, Preston, Steel & Gilleland and Robert J. Beckham, Miami, for appellant.
Wicker & Smith, Miami, and Stephen C. McAliley, Jacksonville, for Ralph Palmisano.
Dixon, DeJarnette, Bradford & Williams and Charles A. Kimbrell, Miami, for Gulf Oil Corp.
HORTON, Judge.
By order of this court, these two appeals were consolidated. In case No. 58-260, the appeal is from a final judgment entered subsequent to a jury verdict adverse to appellant, *420 while in case No. 58-261, the appellant seeks review of a final judgment entered consequent upon the granting of appellee's motion for directed verdict.
This action began under the Florida Guest Statute (§ 320.59, Fla. Stat., F.S.A.) and continued in the name of the executrix after the death of the decedent, under the Survival Statute (§ 45.11, Fla. Stat., F.S.A.) with an additional claim for wrongful death (§ 768.01, Fla. Stat., F.S.A.). The appellant claimed damages allegedly sustained while the deceased was riding as a guest in an automobile owned and operated by the appellee-Palmisano.
In the appeal from the final judgment entered after a jury verdict adverse to the appellant, some twenty grounds are assigned for reversal of the judgment, under which the appellant has argued two points, i.e., (1) that the appellee-Palmisano at the trial was bound by admissions of fact made pursuant to Rule 1.30, Florida Rules of Civil Procedure, 30 F.S.A., and (2) that an attorney representing an undisclosed insurance carrier in a personal injury action, as well as the insured, cannot impeach or contradict the testimony of the insured. Our attention will be first directed to the appellant's second point for we feel that in answering it, it will be unnecessary to consider and pass upon the first point.
The following are the events which the testimony and evidence reveal led up to and occurred at the time of the accident in question. On January 27, 1957, the deceased, Samuel Spadaro, and appellee-Palmisano were travelling in an easterly direction on Buffalo Avenue near Tampa, Florida. The complaint alleges, and Palmisano admits, that the automobile was being driven by Palmisano. A car driven by George C. Dorn, and owned by Gulf Oil Corporation, was proceeding southward on U.S. Highway 301. The cars collided at the intersection of Buffalo Avenue and U.S. Highway 301.
Palmisano and Spadaro were friends of some thirty years' standing and had often travelled together from Syracuse to Florida. Palmisano never required Spadaro to contribute to the expenses of the trip. It appears that Spadaro seldom drove and at the time of the accident did not possess a driver's license.
The answer filed on behalf of Palmisano, by counsel retained by his insurance carrier, generally denied all the allegations of the complaint. Subsequently, the appellant took Palmisano's deposition wherein he admitted that he was driving the automobile. The deposition of the investigating officer revealed that upon his arrival at the scene of the accident, he found Spadaro pinned under the dashboard while Palmisano was outside of the automobile. Spadaro suffered a broken left arm and crushed ribs on his left side. Palmisano sustained injuries to the right side of his head. Considering the fact that the Palmisano automobile was struck on the driver's side, the physical evidence would lend support to the inference that Spadaro might have been driving. Goldie Clayton, an eyewitness, testified that upon the collision of the two automobiles, the right hand door of the Palmisano automobile flew open, taking a man with it. The door then swung closed again, throwing the man back into the automobile. Subsequently, the same man got out of the right hand door and Clayton identified this person as Ralph Palmisano. These facts were further supported by the testimony of Jack Albritton, another eyewitness. This testimony would tend to support the theory advanced by Palmisano's counsel that the insured, Palmisano, was not driving.
At pre-trial conference, counsel retained to defend Palmisano notified the court that he suspected Palmisano was not co-operating in the defense of this cause and there existed some indication of possible collusion to obtain a recovery for the family of his friend, Spadaro. The court announced that the question of who was driving the automobile would be for the jury and counsel for Palmisano would not be required *421 to support a position which he suspected to be untrue.
The cause was called for trial. On opening statement to the jury, counsel for Palmisano informed the jury that he expected the evidence would show that Palmisano was not in the driver's seat at the time of the accident. During the course of examining the witnesses, counsel spent considerable time in eliciting information which tended to indicate that Palmisano was not driving the automobile, in contradiction to Palmisano's admission when called as a witness on his own behalf. In concluding argument to the jury, counsel spent considerable time in reviewing the testimony of the witnesses who said Palmisano came out the right hand door and the physical evidence which indicated that Spadaro received the major injury to his left side while Palmisano's injury was to the right side of his head. Counsel then concluded with:
"I think you can see what has happened here, what has happened in this courtroom. I have no desire to cover up or keep anything from you. What I think probably you suspect is the truth, I think what I suspect strongly is the truth."
The jury thereupon returned a verdict of not guilty.
The question squarely presented is: Can counsel representing an insured, but employed by his undisclosed liability insurer, insert the issue of fraud and collusion into trial proceedings and thereafter seek to impeach and contradict admissions made by the insured? There is no doubt that counsel is in a precarious position. Under the insurance contract, the insurer is obligated to conduct the defense of an action wherein the insured might be found liable. As such, the insurer is not a party to the action although ultimate liability might be sustained by it. Thus occasions arise when actions are brought by good friends or members of a family wherein the defendant is quite eager or willing to co-operate with the plaintiff for obvious reasons. In Massachusetts, where by statute insurance is required of all automobiles as a prerequisite to obtaining registration, the court held that the circumstances required the disclosure of any facts tending to show collusion between the parties. Hill v. West End Street Railway Co., 158 Mass. 458, 33 N.E. 582; Horneman v. Brown, 286 Mass. 65, 190 N.E. 735. However, these holdings are apparently against the weight of authority which refuses to allow counsel to impeach his own client. Katz v. Ross, 3 Cir., 216 F.2d 880, 48 A.L.R.2d 1233; Newman v. Stocker, 161 Md. 552, 157 A. 761; Crothers v. Caroselli, 126 N.J.L. 590, 20 A.2d 77; Friedman v. Berkowitz, 206 Misc. 889, 136 N.Y.S.2d 81. Contra; Posner v. Nutkis, 5 N.J. Misc. 593, 137 A. 716.
We feel the majority view accords with logic and reason. The attorney-client relationship requires the utmost in fiduciary trust, even though this relationship might be an incident of an insurance contract. Fortunately, collusive suits are rare; however, when they do occur, or when there is reason to believe that such is being attempted, it is not proper for counsel to continue to represent both parties. Counsel is then torn between his obligations to two clients who have conflicting interests. The Biblical mandate that "No man can serve two masters" has its modern-day application in cases of this nature. See Canon 6, Canons of Professional Ethics, 31 F.S.A.
We do not attribute unethical conduct to counsel for the undisclosed insurance carrier since he made a full disclosure of his position to the court and was sustained in that position. However, counsel's comments to the jury in his opening and closing statements, as well as his obviously successful efforts to contradict and impeach the insured, did not escape the jury's attention. The issue of fraud and collusion injected into the trial not only tended to, but did, prejudice the appellant in the minds of the jury and caused its attention to be focused upon issues not covered *422 by the pleadings. The issue of fraud and collusion should have been the subject of a plenary action between the insurer and the insured to determine who was driving the automobile at the time of the accident. The views expressed, and the procedure suggested, in Newman v. Stocker, supra, and Katz v. Ross, supra, also seem to be acceptable methods of determining such issues. Once such issues are decided, either in a plenary action in another forum or as a result of the separate trial of such issues in the same case, the insurance carrier and its counsel would be bound by such adjudication and, if favorable, would not be subjected to the latter suit. Whether the former or the latter procedure is followed is generally determined by the time that counsel for the insured has reason to suspect that fraud or collusion exists. The facts and circumstances disclosed by the record in this cause require a reversal of the judgment entered upon the jury verdict.
The remaining point on this appeal concerns the trial court's ruling in granting the motion of Gulf Oil Corporation for a directed verdict. The evidence submitted supports the trial court's action in directing a verdict. The automobile owned by Gulf Oil Corporation was proceeding on an arterial highway with notice of a dangerous intersection; however, the Palmisano automobile was governed by a stop sign and, under the circumstances presented, it appears that the driver of the Gulf Oil automobile had no opportunity to avoid the accident.
Accordingly, the judgment entered in favor of the appellee-Gulf Oil Corporation is affirmed, and the judgment entered in favor of the appellee-Palmisano is reversed for a new trial and proceedings not inconsistent with the views herein expressed.
Affirmed in part and reversed in part.
CARROLL, CHAS., C.J., and PEARSON, J., concur.