Anna M. Gass and George W. Gass, Plaintiffs-Appellees, v. Marilyn Carducci, Defendant-Appellant.

## Gen. No. 48,656.

First District, Second Division.

September 25, 1962.

Rehearing denied October 18, 1962.

182

Querrey, Harrow, Gulanick & Kennedy, of Chicago (John T. Kennedy and Corwin D. Querrey, of counsel), for appellant.

John G. Phillips, of Chicago, for appellees.

MR. JUSTICE FRIEND delivered the opinion of the court:

Plaintiff Anna M. Gass, while riding as a passenger in an automobile driven by her daughter Marilyn Carducci, the defendant, fell from the front seat of the car and was seriously injured. Mrs. Gass

brought suit for damages, and George W. Gass, her husband, joined as a plaintiff, seeking recovery for loss of consortium, association, and services, and for medical expenses incurred. The jury returned verdicts finding defendant guilty, assessing Mrs. Gass's damages in the amount of $50,000 and those of her husband in the amount of $7000. The court entered judgment on the verdicts and subsequently entered an order denying defendant's post-trial motions. Defendant, appealing from the judgment and order, raises no question as to the amount of the verdicts or judgment, but only as to alleged errors on trial of the case.

The accident occurred on September 29, 1956. Mrs. Carducci was driving her infant son Michael and her mother Mrs. Gass to a doctor's office in the Chicago Loop from the Gass home in Chicago Heights. When called as an adverse witness by plaintiffs under section 60 of the Civil Practice Act (Ill Rev Stats 1961, c 110), defendant testified that the trip to the doctor's office was necessitated by Michael's asthmatic condition, and that she had asked her mother to accompany her to the doctor's office because Michael had stayed at his grandmother's home on numerous occasions, with the result that her mother, Mrs. Gass, was better able to relate his symptoms to the doctor than was the defendant herself. Defendant further testified that, before starting, she helped her mother into the front seat of the car, closed the door, and then went around to the driver's seat. Mrs Gass testified that she herself locked the door by pushing the handle down.

There was competent evidence from which the jury could find that the negligence of defendant was the proximate cause of the injury, as alleged by plaintiffs. Plaintiffs alleged that defendant, while en route to the doctor's office, made a sudden and rather

184

quick turn to the left, the momentum of which propelled Mrs. Gass toward the door—in defendant's own words, her mother "flew out of the car" during the course of this turn. Plaintiffs also alleged the weakness of a spring in the locking mechanism of the front door next to which the plaintiff was seated. It was alleged that defendant knew, or in the exercise of reasonable care should have known, of this condition.

Defendant stated that she and her husband were joint owners of the car in question. She denied knowledge of any defect in the door at the time of the accident, or of the likelihood of the door to open. She did admit, however, that they had had difficulty with the door at the time they purchased the car, new, from Walton Motors, and that although they had requested Walton Motors to remedy the defect, the seller had never done so.

Defendant's husband was the manager of a cab service and employed Noble Johnston as an automobile repairman. Johnston testified that about a month before the accident defendant's husband told him that "the door was coming open," and asked him to repair the door lock when he had the time. It was about two weeks after the accident that Johnston was free to examine the car door. He found that the latch spring was weak and replaced it. It was his opinion that this condition might have existed when the car came from the factory; in any event, this condition had existed for at least a year prior to his examination and repair.

█ Although defendant has on this appeal raised no issue as to Mrs. Gass's status in the car, it is clear from the complaint and the proof adduced in its support that she was a passenger and not a guest within the meaning of the Auto-Guest Statute (Ill Rev Stats 1961, c 95½, § 9-201). In accompanying

defendant and her child to the doctor's office for the purpose of relating the child's medical symptoms, Mrs. Gass was assisting defendant in the discharge of defendant's legal duty to care for the child. In Connett v. Winget, 374 Ill 531, 534–535, 30 NE2d 1 (1940), the court said that in determining whether a person is a guest within the meaning of the guest statutes in the several jurisdictions, consideration is given to the person or persons advantaged by the carriage, and continued:

> "[I]f it confers only a benefit incident to hospitality, companionship or the like, the passenger is a guest, but if the carriage tends to promote mutual interests of both the person carried and the driver, or if the carriage is primarily for the attainment of some objective or purpose of the operator, the passenger is not a guest within the meaning of such enactments. [Citing and discussing cases.]"

In Palmer v. Miller, 310 Ill App 582, 35 NE2d 104 (1941), revd other grounds, 380 Ill 256, 43 NE2d 973 (1942), the Appellate Court held (p 594) that the Guest Statute did not apply to plaintiff, a nurse who had been asked to take care of defendant, who was bleeding profusely, while he was being driven to a doctor's office. Similarly, this court held in Perrine v. Charles T. Bisch & Son, 346 Ill App 321, 331–332, 105 NE2d 543 (1952), that a wife who accompanied her husband to the hospital in defendant company's ambulance was not a guest within the meaning of the Auto-Guest Statute, since her presence in the ambulance was for the purpose of assisting in caring for her husband, which tended to promote the mutual interests of the wife and the ambulance company. In an Alabama decision, Sullivan v. Davis, 263 Ala

685, 83 So2d 434 (1955), rendered under an auto-guest statute similar to our own, it was held that one who accompanies a driver with a view to assisting that driver in the discharge of his legal obligation to care for a member of the driver's family, confers a tangible benefit upon the driver such that the wilful and wanton misconduct requirements of the guest statute do not apply. The facts of the present case bring it well within the authority of these decisions.

■ Defendant's principal assignments of error relate to the admission into evidence of Noble Johnston's testimony. First, it is contended that Johnston's testimony as to what defendant's husband told him about the door's coming open, as well as his directions to repair it, are inadmissible hearsay evidence as against defendant, who was not present during the conversation in question. We are of the opinion that this portion of Johnston's testimony was not hearsay evidence since it was not used by plaintiffs as evidence of the actual condition of the door, but as circumstantial evidence of defendant's probable knowledge of the condition of the door.

■■ Hearsay evidence, as we understand it, consists in the testimonial use of an unsworn, out-of-court statement as proof of the fact asserted by the out-of-court declarant. Here, however, the fact asserted by Clement Carducci, the likelihood of the door to open, was, as we hold, competently proved by Johnston's direct testimony as to his actual examination of the door. In addition to proving the actual likelihood of the door to open, it was plaintiffs' burden to show that the defendant knew, or in the exercise of reasonable care should have known, of this likelihood. When an out-of-court statement is used, not as evidence of the fact asserted but as circumstantial evidence for another purpose, the hearsay rule does

187

not apply. 6 Wigmore, Evidence § 1788 (3d ed 1940).
More particularly, Wigmore indicates in section 1789
(pp 236–237).

> "[T]he Hearsay rule interposes no obstacle to
> the use of . . . oral informations . . . or any
> other form of verbal utterances by one person,
> as circumstantial evidence that *another person
> had knowledge* or belief as to . . . the *dangerous
> condition* of a place or a machine . . . ." (Emphasis Wigmore's.)

With respect to circumstantial evidence of communication between husband and wife, Wigmore indicates in section 261 (2 Wigmore, pp 82–83):

> "Communication to a *husband* or *wife* is always
> receivable to show probable knowledge by the
> other (except where they are living apart or are
> not on good terms), because, while it is not certain that the one will tell the other, and while
> the probability is less upon some subjects than
> upon others, still there is always some probability,—which is all that can be fairly asked for
> admissibility." (Emphasis Wigmore's.)

We believe that the logic of this rule applies
with equal force when it is a communication *by* a
spouse to a third person instead of a communication
*to* a spouse by a third person, which is offered as
circumstantial evidence of knowledge on the part of
the absent spouse. Further, we think it highly probable that a husband would communicate to his wife
the dangerous likelihood of the door of their family
car to open. Accordingly we conclude that Johnston's
testimony concerning the statements made to him by
Clement Carducci was not hearsay, as contended
by defendant, but admissible circumstantial evidence
of defendant's probable knowledge of the condition
of the door.

■ Defendant next objects to that part of Johnston's testimony in which he related his examination and repair of the door two weeks subsequent to the accident, at which time he found a weak latch spring which caused the door to open when pressure was exerted against it. In support of her contention that this testimony as to the condition of the door two weeks subsequent to the accident was inadmissible as evidence of its condition at the time of the accident, defendant cites Rotche v. Buick Motor Co., 358 Ill 507, 193 NE 529 (1934). This case held that in an action by the purchaser of an automobile against the manufacturer thereof, it was error for the trial court to admit as evidence of defective manufacture testimony that a cotter pin in the braking mechanism was unspread when the automobile was examined several weeks after the accident. There was evidence that after the accident the automobile had been successively removed to two garages which were not locked, with the result that (p 517) "ample opportunity was afforded after the accident and before any witness took particular notice of the car to tamper with the cotter pins. These pins were made of soft metal and without exerting effort or skill could be removed or straightened in a few moments."

More recently, in Paul Harris Furniture Co. v. Morse, 10 Ill2d 28, 139 NE2d 275 (1956), an action for damages resulting from the explosion of a propane gas tank, it was held error to admit as evidence of negligence in the manufacture of the tank testimony relating to the absence of a plug in the bottom of the tank two days after the explosion. Here again the court pointed out that the surrounding circumstances were such as to make untenable an inference that conditions subsequent to the event complained of also existed at the time of that event. The court noted (p 36) that "there was ample opportunity for

■■■■■

the plug to have been lost or removed while it was standing on Acme's storage lot for almost three months," citing the Rotche case.

■ But where the nature of the defect and the surrounding circumstances are such as to allow a reasonable inference that the defect subsequently established existed at the time of the accident, such evidence is admissible. Thus, in City of Bloomington v. Osterle, 139 Ill 120, 28 NE 1068 (1891), it was held that the existence of rotten stringers in a sidewalk examined two weeks after the accident was evidence the jury could consider in determining the condition of the sidewalk at the time of the accident. The court noted that the stringers in question could not have rotted within a two-week period.

We believe it is fully consistent with these authorities to hold that Johnston's testimony as to the weakness of the spring was properly admitted. His estimate that the spring had been in a weakened condition for a period of at least one year was uncontradicted. Unlike the cotter pin in the Rotche case or the plug in the Harris Furniture Company case, the spring here in question was embedded in the interior workings of an automobile door, not exposed so as to permit of casual tampering. When examined by Johnston the automobile was parked in defendant's garage, and there is no evidence to suggest that it was parked elsewhere in the interval between the accident and Johnston's repair. We hold that this evidence was properly admitted.

■ Defendant finally asserts with respect to this aspect of Johnston's testimony that there was no proof that the spring in question was related in its effect to the door lock, Mrs. Gass having testified that she locked the door by pushing the handle down. It is sufficient to note in this regard that Johnston's

190

testimony as to the causal relationship between the weak latch spring and the likelihood of the door to open was clear, unshaken by cross-examination and uncontradicted by any other evidence.

■ Defendant objects to questions asked her by plaintiffs' counsel relating to "trouble" with the door when the car was first purchased, and the failure of Walton Motors to remedy the situation. In context, it seems clear from the complaint and the opening statement of plaintiffs' counsel that all parties assumed that this "trouble" related to the defect in controversy. In any event, we think that defendant's testimony had at least some probative value on the issue of due care which the jury might consider for whatever in their judgment it was worth.

■ Finally, defendant's counsel, employed on her behalf by her insurance company, argues that he should have been allowed to impeach the motives and testimony of his client. Specifically, defendant contends that it was error for the trial judge to instruct defendant's counsel not to question defendant about two prior depositions in which she stated that she did not remember who closed the door, it having been her testimony at trial that she, not the plaintiff, closed it. Counsel further contends that he should have been permitted to inform the jury that the defendant was insured, for the admitted purpose of implying that there was collusion between his client and the plaintiff.

Although there are some cases in other jurisdictions which hold to the contrary, it is the weight of authority that insurance counsel may not impeach his client, the insured, for the benefit of his employer, an insurance company not a party to the suit. Crothers v. Caroselli, 126 NJL 590, 20 A2d 77 (1941); Friedman v. Berkowitz, 206 Misc 889, 136 NYS2d 81

(City Ct. of Bronx County 1954); Katz v. Ross, 216 F2d 880 (3d Cir 1954); Newman v. Stocker, 161 Md 552, 157 A 761 (1932).

■ Illinois cases are in accord with the majority of jurisdictions which have ruled on this question. In Tennes v. Tennes, 320 Ill App 19, 50 NE2d 132 (1943), wherein defendant and plaintiffs, his guests, were relatives, the court ruled that the defendant's admission that he fell asleep at the wheel of his automobile entitled plaintiffs to judgment notwithstanding the verdict. In so holding, the court rejected the conduct of defendant's attorney, retained by a liability insurer to defend him, in (1) implying, in his closing argument, that his client was in collusion with the plaintiffs, (2) interjecting the false issue of insurance into the case, (3) and attempting to impeach his own client's testimony by reading the deposition of one of the plaintiffs. More recently, in Allstate Ins. Co. v. Keller, 17 Ill App2d 44, 149 NE2d 482 (1958), the attorneys retained by an insurer took the deposition of the insured for the admitted purpose of placing the company in a position to disclaim liability on the policy. This conduct was held to constitute grounds for a waiver of the insured's breach of the co-operation clause of the policy, the court stating (p 52) that "an insurer's attorneys are bound by the same high standards which govern all attorneys, whether or not privately retained."

■ In conformity with these decisions, we hold that the trial court was correct in its determination that the defendant's attorneys could not use defendant's depositions or her insurance coverage as the basis for an argument (wholly speculative in the record before us) that defendant and plaintiff were acting collusively. This ruling does not mean that an insurance company must stand helplessly by and see

192

its pockets looted in a case of provable collusion. "The law affords protection to insurance companies against fraud, but they cannot proceed in the manner disclosed by the record in this case." Tennes v. Tennes, 320 Ill App 19, 35, 50 NE2d 132 (1943).

■ Lastly, defendant urges that plaintiffs' argument to the jury was prejudicial. We have examined the argument complained of and find no merit to this contention.

We are of the opinion that the complaint and proof offered in its support were sufficient to establish a cause of action based upon negligence. Since we find no reversible error in the proceedings in the trial court, the judgment and order are affirmed.

Judgment and order affirmed.

BRYANT, P. J. and BURKE, J., concur.