273 N.J. Super. 276 (1994)
641 A.2d 1079
ANGELINA MONTANEZ, PLAINTIFF-APPELLANT,
v.
SANTOS IRIZARRY-RODRIGUEZ, DEFENDANT-RESPONDENT, AND CATALDI BUICK DEALERSHIP, GENERAL MOTORS COMPANY, JOHN DOE SUPPLIER, JOHN DOE MANUFACTURER (SUCH NAMES BEING FICTITIOUS AND UNKNOWN), JOINTLY, SEVERALLY, INDIVIDUALLY AND IN THE ALTERNATIVE, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Submitted January 11, 1994.
Decided May 19, 1994.
*278 Before Judges BRODY, STERN and KEEFE.
Montanez & Montanez, attorneys for appellant (Teofilo Montanez, on the brief).
Bruce M. Resnick, attorney for respondent, Santos Irizarry-Rodriguez (Mitchell S. Rosenzweig, on the brief).
The opinion of the court was delivered by KEEFE, J.A.D.
The principal question presented by this appeal is whether an attorney, assigned by an insurance company to defend an insured in a civil case arising out of a motor vehicle accident, may impeach the insured's credibility on the ground that the attorney was surprised by the insured's testimony. We hold that the attorney may not do so; that his conduct was prejudicial to his client; and that the trial judge's error in permitting the attorney to do so had the capacity to affect the outcome of the trial. Thus, the matter is remanded for a new trial.
Plaintiff, Angelina Montanez, an attorney and wife of defendant Santos Irizarry-Rodriguez, was a passenger in her husband's *279 vehicle on January 23, 1988 when it left the roadway and struck a utility pole.
Plaintiff brought suit against her husband, Cataldi Buick Dealership, General Motors Company, and several John Doe defendants. The complaint, filed by her partner and brother Teofilo Montanez, alleged that the vehicle "sustained a blow-out of a tire[.]" As to Irizarry-Rodriguez, plaintiff alleged that he was careless and negligent in the operation of the vehicle so as to cause it to leave the roadway. The remaining defendants' liability was based upon an alleged defect in the tire. The product liability claims were dismissed prior to trial either voluntarily or by way of summary judgment. Thus, the matter proceeded against Irizarry-Rodriguez on the negligence claim against him.
The matter was tried on all issues. Plaintiff and one of her treating physicians testified at the trial. After plaintiff rested her case, defense counsel called his client Irizarry-Rodriguez as a witness. Defendant, who expressed some difficulty with the English language, testified through an interpreter.
After establishing that the accident happened on the same road that his wife had previously described in her testimony, the following colloquy took place between defense counsel and defendant:
Q. Okay. Around the time the accident happened, did you hear any unusual sounds around your car?
A. Yes.
Q. What did you hear?
A. A small explosion.
Q. Okay. And where did the small explosion seem to be coming from?
A. I can't say for sure, because at the time of the explosion, I was already in the woods.
Q. Did you hear any sounds while you were on Moss Mill Road that were unusual to you?
A. No.
Defense counsel then approached sidebar; announced to the judge that he was "surprised" by his client's testimony; and requested that he be permitted to treat his client as a "hostile *280 witness." Counsel advised the judge that he intended to ask his client questions "pertaining to his bias in this case."
Defense counsel initially advised the judge that "outside this courtroom" defendant told him that the blow-out had occurred on the roadway, whereas his testimony indicated that he did not hear the "explosion" until he was "already in the woods." Defense counsel also represented that his client had given "an oral statement which was recorded," that the statement was given to a representative of the insurance company, and that he might seek leave to call the insurance representative as a "rebuttal" witness. Later, defense counsel advised the judge that he had met with his client prior to trial in his office and had interviewed him with the assistance of an interpreter. He revealed that he had tape-recorded that interview.
The trial judge, accepting at face value counsel's "representation" that defendant's testimony varied from the version he had given the attorney and insurer at an earlier time, permitted defense counsel to treat defendant as a hostile witness over plaintiff's objection.
Thereafter, defense counsel launched into an examination of defendant in a manner that no reasonable person could interpret as being other than an attack on his client's credibility. The questioning focused on the meeting defense counsel had with defendant in his office. The lengthy examination consisted mainly of leading questions by defense counsel testing defendant's recollection of certain topics counsel allegedly discussed with him during the meeting. The following is a brief example of the nature of the inquiry:
Q. Do you remember telling me at the time we met in my office that the explosion that you heard was a loud explosion, do you remember comparing it to a truck backfiring?
The witness: Yes.
....
Q. Okay. Today you said it was a small explosion. In my office you said it was a loud explosion. Why did you give a different answer today?
....

*281 Q. Do you remember telling me in my office that you didn't think this accident was your fault at all?
A. No.
Q. Do you remember telling me that you wanted your wife to get as much money as possible?
A. No.
....
Q. At any time in my office during our interview did you tell me that you were not paying attention when you were driving?
A. Yes.
Q. And at any time in my office did you tell me that you thought this accident was your fault?
A. Yes.
Q. Ask him if he knows what the penalty of perjury is?
A. No, I don't know what punishment or penalty.
Q. Does he understand that  do you understand that is a crime?
A. No.
Q. Ask if  would you like to change any of your answers that you've given up till now?
A. For example, the answers I am giving are the answers I know and the answers I have tried to give, it's an answer to a question he just asked me, that he said to me, that I had said that I would like that my wife would get some money out of her case. She is my wife and she is the one who has suffered all of the injuries. When I said that I wanted my wife to get some money at least to make herself better was because he said to me, my lawyer said to me 
Defense Counsel: Your honor, I'm going to make an objection. I don't think that's responsive to the question.
The Witness: Please, then why wouldn't he  he let me answer the question?
Defense Counsel: Because he's not answering the question.
The Court: Well 
The Witness: I'm just in English too much, but this is a free country.
During the above examination defense counsel apparently placed a tape recorder on the counsel table. Although the jury was never specifically advised that a tape recording of the office interview had been made, that fact was fairly implied by the tape recorder's presence during the examination.
*282 At the end of defendant's direct examination, plaintiff's counsel requested permission to listen to the tape recording of the interview in order to ascertain whether defendant had made statements to his attorney prior to trial that were inconsistent with defendant's proposed trial testimony. Ironically, defense counsel, who had just attacked his client's credibility in front of the jury, denied the request, claiming the attorney-client privilege, with the further irrelevant objection that "[d]iscovery is long over." The judge denied the request and also denied plaintiff's motion for a mistrial.
In summation, defense counsel advised the jury that he had a client who was not "crazy about me as his lawyer[,]" but it was an issue that should not concern them. Thereafter, counsel told the jury that defendant "wants to lose this case and wants his wife to win the case." He admitted that one of his purposes in examining defendant was "to show inconsistencies in testimony he gave here with things he said in the past when he was not here." Finally, although admitting that it was "pretty unusual" for a lawyer to attack his client and that he was "uncomfortable" doing it, he justified his conduct by stating, "that's my job, I had to do it[,]" because defendant "was not credible."
The jury found that defendant was not negligent in response to special interrogatories. Thereafter, a judgment was entered in favor of defendant from which plaintiff now appeals.
On appeal, plaintiff maintained in her brief that the trial judge erred in failing to conduct an Evid.R. 8 (now N.J.R.E. 104) hearing in order to determine whether defendant was in fact a hostile witness. Plaintiff also contended that the trial judge erred by admitting the content of defendant's prior statement as substantive evidence when it did not meet the requirements of Evid.R. 63(1)(a) (now N.J.R.E. 803(a)). Defendant contended in his brief that the prior contradictory statement was not admitted into evidence under Evid.R. 63(1)(a), but, rather, defendant's credibility was impeached pursuant to Evid.R. 20 (now N.J.R.E. 607 and 803(a)(2)).
*283 It became obvious to us upon reviewing the parties' briefs that defense counsel had no reason to impeach his client's testimony were it not for his unexpressed concern that the testimony was going to be harmful to the interests of the insurer who had appointed him to defend the matter. Because neither brief addressed the issue of whether assigned insurance counsel may impeach the credibility of the insured-client when in the course of trial a conflict arises between the client's interests and the interests of the insurer, we asked the attorneys to address the following questions in supplemental briefs:
If the attorney's primary duty is to his client (the defendant) may he ethically launch into an impeachment of his client's testimony in order to protect the interests of the insurer? Is there an alternative course of action that would protect his client's interest?
In response to our inquiry, insurance counsel defended his actions by relying on R.P.C. 1.6(b) and R.P.C. 3.3(a). In addition, counsel relied upon Evid.R. 20 and the cases of State v. Johnson, 216 N.J. Super. 588, 524 A.2d 826 (App.Div. 1987), and State v. Gallicchio, 44 N.J. 540, 210 A.2d 409 (1965). Plaintiff maintained, however, that R.P.C. 1.8(b) applies, and claimed that the fraud exception to R.P.C. 1.6 was not satisfied because defense counsel failed to make a prima facie showing of defendant's fraud. Further, plaintiff argued that Evid.R. 20 refers to the impeachment of a witness, not a client, and, in any event, the procedural requirements for neutralizing a witness's testimony set forth in State v. Johnson, supra, were not met.
Defendant did not address the second question we posed for supplemental briefing. Plaintiff, however, argues that defense counsel's remedy was either to withdraw from representation of the defendant, or obtain the consent of the insured to proceed notwithstanding the alleged conflict.
The issues that we presented for supplemental briefing are somewhat novel in this jurisdiction. The first question was at least partially answered some time ago by the Court of Errors and Appeals in Crothers v. Caroselli, 126 N.J.L. 590, 594, 20 A.2d 77 (E & A 1941). In that case, a defense attorney, who the Court *284 surmised was probably designated by an insurance carrier to represent the defendant, was not allowed to neutralize his client's testimony.
We hold that it is not at the hands of a party to an action, offering himself as a witness in his own behalf, to cause himself to be contradicted or his testimony neutralized, through prior, oral or written, inconsistent or contrary, statements made by him.

[Id. at 594, 20 A.2d 77.]
Crothers represents the majority rule. See Katz v. Ross, 216 F.2d 880, 884-85 (3d Cir.1954); Newman v. Stocker, 161 Md. 552, 157 A. 761, 763 (1932); Gass v. Carducci, 37 Ill. App.2d 181, 185 N.E.2d 285, 290 (1962); Spadaro v. Palmisano, 109 So.2d 418, 421-22 (Fla.App. 1959).
The rule prohibiting impeachment of an insured by counsel assigned by the insurer is based upon the practical observation that the insured's impeachment is relevant only to an issue between the insured and the insurer, and has no bearing on the only issue in the case at hand, i.e., whether the insured is liable to the plaintiff. Because the insurer is not a party to the case between the plaintiff and the insured, the question whether the insurer will be required to indemnify the insured for the insured's liability cannot be adjudicated in that litigation. See, e.g., Newman, supra, 157 A. at 763 ("[The insurance company's] liability to the defendant on a policy of insurance is not being adjudicated in the suit; the only adjudication possible is that upon the liability of the present defendant to the present plaintiff.").
No New Jersey court has specifically addressed the insurer's remedy in the exact context of this case. However, our Supreme Court has acknowledged the possibility of fraud and collusion in tort cases between family members and between hosts and guests, Immer v. Risko, 56 N.J. 482, 267 A.2d 481 (1970); France v. A.P.A. Transport Corp., 56 N.J. 500, 267 A.2d 490 (1970); Cohen v. Kaminetsky, 36 N.J. 276, 176 A.2d 483 (1961), and has suggested two possible remedies for the insurer when the issue arises. The first is intervention by the insurance company in the case between the claimant and the insured, wherein the insurance *285 company would "reveal [its] status in the case, treating the covered defendant-[insured] as a hostile witness in order to attack credibility and show that the husband and wife may be scheming to gain a recovery against the insurance company." Merenoff v. Merenoff, 76 N.J. 535, 554, 388 A.2d 951 (1978). The second suggested approach is a "declaratory judgment action following disclaimer...." Id. at 555, 388 A.2d 951. However, both approaches envision a situation in which the insurance company has knowledge of the fraud or collusion in sufficient time to act by way of intervention or declaratory judgment before the trial between the claimant and the insured begins.
Merenoff did not anticipate the issue arising as it did here, during trial. Clearly, the insurance company did not have sufficient time to intervene in the subject litigation. Nonetheless, Merenoff cannot be read to suggest that assigned counsel for the insured should be permitted to declare a position contrary to the insured-client, and represent the insurance company's interest as if it had intervened. Those jurisdictions that have addressed how the problem should be resolved when it arises during trial have unanimously adopted the view that insurance counsel may not treat the client as a hostile witness in order to vindicate the insurance company's interest. Rather, the insurance company's remedy is by way of separate action after the liability verdict is rendered against the insured. Katz, supra, 216 F.2d at 884-85; Newman, supra, 157 A. at 763; Gass, supra, 185 N.E.2d at 291; Spadaro, supra, 109 So.2d at 421-22. The Newman Court concisely stated the rationale for the rule:
Only another party, treating this defendant as a witness, could be permitted to introduce the contradictory evidence; and the insurer is not a party in this suit, even though it may have employed counsel to defend the suit, having regard to its undertaking to indemnify the defendant. Its liability to the defendant on a policy of insurance is not being adjudicated in the suit; the only adjudication possible is that upon the liability of the present defendant to the present plaintiff. A new claim thereafter, and, if it is resisted, a new suit, would be necessary to adjudicate the liability on the policy. And it would be in that new suit that the insurer would appropriately make the defense on the ground that the insured seeks indemnity for loss from collusive agreement rather than from the liability imposed by law which *286 is the subject of insurance, or on the ground that in violation of a term of the policy the insured has failed to co-operate in the defense, or on any other ground.
[Newman, supra, 157 A. at 763.]
Thus, the rule that prohibits insurance counsel from impeaching the insured "does not mean that an insurance company must stand helplessly by and see its pockets looted in a case of provable collusion." Gass, supra, 185 N.E.2d at 291.
The preference for a separate proceeding is rooted in sound principles of attorney ethics. We acknowledge that the "triadic relationship [of] insurer, insured, and counsel" creates difficult ethical problems. Lieberman v. Employers Ins. of Wausau, 84 N.J. 325, 338, 419 A.2d 417 (1980). Nonetheless, it is clear that insurance counsel is required to represent the insured's interest as if the insured hired counsel directly. Ibid. Indeed, insurance counsel's loyalty to the insured may actually be paramount. Ibid. Permitting insurance counsel to impeach the credibility of an insured places counsel in a position of representing conflicting interests, and actually permits counsel to elevate the insurer's interest over the insured's. Such practice cannot be condoned. See Williams v. Bituminous Casualty Corp., 51 N.J. 146, 149, 238 A.2d 177 (1968) ("An attorney, engaged by the carrier to defend in the insured's name, could not ethically seek ... a result [which would deny coverage to the insured.]").
The majority view throughout the country is that "when the interest of the insurer and the insured differ, the insurance defense lawyer's ethical duty of undivided loyalty to the client is owed to the insured." Brooke Wunnicke, The Eternal Triangle: Standards of Ethical Representation by the Insurance Defense Lawyer, For The Defense, February 1989, at 9. See R.P.C. 1.7(b) ("A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests[.] ..."); Burd v. Sussex Mutual Ins. Co., 56 N.J. 383, 395, 267 A.2d 7 (1970) (An insurance carrier "may not, in the insured's name, so defend as to exculpate the carrier alone.").
*287 Nothing can be more devastating to an insured than to have his or her credibility challenged by assigned insurance counsel. In this case, defendant was left essentially defenseless to his attorney's attack on his credibility. The record discloses that defendant maintained that his testimony in the courtroom was not inconsistent with what he had told his attorney earlier. However, because he was abandoned by counsel, he was unable to advocate that position in a meaningful fashion. Without actual proof that defendant's proposed testimony at trial was, in fact, contradictory to prior statements given to the insurance company or insurance counsel, the jury was nonetheless left with the impression that defendant's attorney believed that defendant was a liar. Moreover, through his examination of defendant, defense counsel placed his own credibility above that of his client's. We conclude that
[t]he issue of fraud and collusion injected into the trial not only intended to, but did, prejudice the [defendant] in the minds of the jury and caused its attention to be focused upon issues not covered by the pleadings.
[Spadaro, supra, 109 So.2d at 421-22.]
Defense counsel's reliance upon R.P.C. 1.6(b) and R.P.C. 3.3(a)(2) and (4) is misplaced. While either rule may permit the lawyer to reveal information gained through the lawyer's representation of the client in certain circumstances, neither rule requires or permits the attorney to represent a conflicting interest hostile to the client's position. The remedy for an attorney in such situations is to disclose the information the attorney believes is required by R.P.C. 1.6(b) and R.P.C. 3.3 to the court, and request permission to withdraw from the litigation pursuant to R.P.C. 1.16. See Lieberman, supra, 84 N.J. at 339, 419 A.2d 417 (quoting Lieberman v. Employers Ins. of Wausau, 171 N.J. Super. 39, 49-51, 407 A.2d 1256 (App.Div. 1979) ("[W]henever counsel in such cases has reason to believe that the discharge of his duty to the insured would conflict with the discharge of his duty to the insurance carrier, he cannot continue to represent both."). Of course, before withdrawing from representation the lawyer is *288 obliged to give reasonable notice to the client of the grounds for withdrawal. R.P.C. 1.16(d).
In such cases, insurance counsel should ask for a recess when it becomes clear that the insured's testimony is at variance from prior statements. During the recess counsel can explain to the client the consequences of giving testimony which the attorney believes to be untrue. If the client persists in the view that the testimony about to be given is the correct version, counsel should make application to the court for permission to withdraw from representation pursuant to R.P.C. 1.16, assuming counsel's continued belief that the client's testimony is fraudulent.
The court, in turn, is then obligated to ascertain whether a true conflict exists. In such circumstances, more than the mere representation of hostility is required. If a tape recorded statement or other written statement has been given by the insured, those materials should be reviewed by the judge. Perhaps the insured's full testimony, to be given at a N.J.R.E. 104 hearing, should be taken to assist the judge in making a decision on whether a true conflict exists. If the court finds that defense counsel has been placed in a position of conflict, a mistrial must be granted. Of course, none of these procedures were followed in this case. Not even the bare minimum of showing true hostility was evidenced by this record. See State v. Gallicchio, supra, 44 N.J. at 547-48, 210 A.2d 409 (The trial judge should, out of the hearing of the jury, decide that there was a prior statement of the witness which is contradictory to his present testimony; that the attorney did not have prior knowledge that the witness would testify contrary to such prior statement; and that the present testimony is harmful in some way).
The judgment under review is reversed and the matter is remanded for a new trial. Present defense counsel should withdraw from the case. We take no position on what procedures should be followed by the insurance company with respect to defendant's continued representation.