**GREAT WEST CASUALTY COMPANY, Plaintiff,**

v.

**DEKEYSER EXPRESS, INC., TNT Logistics Corporation, Trelleborg YSH, Inc. and Lola Camp, Defendants,**

and

**Trelleborg YSH, Inc., Counter-Claimant,**

v.

**Great West Casualty Company, Counter-Defendant,**

and

**TNT Logistics Corporation, Counter-Claimant,**

v.

**Great West Casualty Company, Counter-Defendant.**

No. 05–CV–1398.

United States District Court,
C.D. Illinois,
Peoria Division.

Nov. 29, 2006.

David E. Morgans, Mary Spring Luce, Robert A. Dawczak, Myers Miller & Krauskopf, Howard Krauskopf, Myers, Miller & Krauskopf, for Plaintiff/Counter-Defendant.

Mercer Dean Turner, Law Office of Mercer Turner PC, James P. Ginzkey, Ginzkey Law Office, Bloomington, IL, for Defendants.

Anthony J. Monaco, David E. Kawala, Joshua Edward Liebman, Peter G. Skiko, Swanson Martin & Bell, Chicago, IL, David B. Mueller, Cassidy & Mueller, Peoria, IL, for Defendants/Counter-Claimant.

### ORDER

McDADE, District Judge.

Before the Court is Plaintiff, Great West Casualty Company's Motion for Summary Judgment. (Doc. 69.) Defendant Trelleborg YSH, Inc. has filed a Response to the Motion for Summary Judgment. (Doc. 96.) Defendant TNT Logistics Corp has also filed a separate Response to the Motion. (Doc. 94.) Plaintiff has filed a Reply to those initial Responses. ("Plaintiff's First Reply," Doc. 105.) In addition, Defendant Dekeyser Express, Inc. later filed a separate Response to the Motion for Summary Judgment (Doc. 119) and Plaintiff filed a separate Reply to that Response (Doc. 121). For the reasons that follow, Plaintiff's Motion for Summary Judgment is Granted in Part and Denied in Part.

## BACKGROUND

The subject matter of this case revolves around another case pending before this Court. *Camp v. TNT Logistics Corp.,* 04-cv-1358 (C.D.Ill. filed Oct 18, 2004) (the "Camp Case"). It is necessary to first understand the Camp Case before addressing the case at bar.

The Plaintiff in the Camp Case, Lola Camp was hired before 2003 by Transport Leasing/Contract, Inc. ("TLC") and was later leased to third-party Defendant Dekeyser Express, Inc. ("Dekeyser"). On January 22, 2003, Ms. Camp was dispatched to a plant in Carmi, Illinois run by Defendant Trelleborg YSH, Inc. ("Trelleborg") to pick up a load of automotive parts. Upon her arrival, part containers were allegedly loaded into Camp's trailer in an improper manner and Camp refused to accept the trailer. Trelleborg contacted Defendant TNT Logistics Corp. ("TNT"), who oversaw shipping for the recipient of the load. TNT and DeKeyser have entered into a contractual agreement for DeKeyser to provide shipping for TNT's clients ("Master Agreement"). TNT insisted that the load be shipped immediately, and according to Camp, faxed a statement to Trelleborg releasing Camp and Trelleborg from any liability should anything happen.

Camp then transported the load to the Mitsubishi plant in Normal, Illinois. As she began to open the rear doors of the trailer, an unsecured container began to fall from the trailer. Camp then slammed the door shut to prevent the container from falling on her. In doing so, she allegedly sustained injuries to her neck, right arm, and right shoulder.

Camp filed a worker's compensation claim with DeKeyser, and collected bene-

fits. She then filed claims for negligence against both TNT and Trelleborg and the litigation was born. She alleged that TNT and Trelleborg failed to ensure that the shipment was properly loaded and secured before allowing it to be shipped. TNT and Trelleborg then filed claims against DeKeyser and TLC, alleging that DeKeyser was contributorily negligent for failing to properly train and supervise Camp. They also asserted claims against DeKeyser for breach of contract. However, the breach of contract claims are no longer in issue since they have been dismissed by this Court for lack of venue do to an arbitration clause meant for such issues. In addition, Dekeyser and TNT have recently brought crossclaims against each other in the Camp Case.

With this case in mind, we now turn to the case at bar. The Plaintiff in this case, Great West Casualty Company ("Great West") has brought an action in this Court seeking a judicial determination on issues regarding insurance coverage. Great West seeks to avoid having to provide coverage for any party for any liability incurred from the Camp Case. At the same time Great West also seeks a judicial determination holding that they are entitled to control the litigation process for some of the defendants.

Great West's position is based upon a policy that was issued to Dekeyser with effective dates of August 1, 2002 through August 1, 2003. (the "Great West Policy," Doc. 69 at Ex 5.) In addition, The Great West policy contains an endorsement naming TLC as an additional insured. (Id. at 25.) It is evident from this litigation that should Dekeyser, TLC, TNT or Trelleborg be found liable in the Camp Case they would seek coverage from Great West based upon the Great West Policy. Great West now seeks to head them off at the pass by filing this action. At the same time, Great West wishes to hedge their bet

by maintaining control of the litigation for Dekeyser—the party whom they originally insured. All together, Great West's complaint (Doc. 1) seeks the following judicial determinations: 1) Great West owes no duty to DeKeyser in the third party actions brought against Dekeyser by TNT and Trelleborg; 2) Great West is entitled to control the defense of Dekeyser in the third party actions while supplying that defense pursuant to a reservation of rights; and 3) Great West has no duty to defend or indemnify Trelleborg and TNT as to Ms. Camp's claims against them.

In the context of the amended complaint, Great West has not sought summary judgment against Dekeyser on Counts I and II, (based on the absence of any duty to provide insurance coverage) because discovery of that issue is still ongoing. Instead their motion for summary judgment relates only to Counts III and IV. In Count III Great West seeks summary judgment claiming that they are entitled to control the defense of Dekeyser, and in Count IV Great West challenges any obligation on its part to defend or indemnify Trelleborg and TNT for any liability they incur in the Camp Case. This Court will address these counts in their respective order.

## LEGAL STANDARD

Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the responsibility of informing the Court as to portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d

265 (1986). The movant may meet this burden by demonstrating "that there is an absence of evidence to support the non-moving party's case." *Id.* at 325, 106 S.Ct. 2548.

Once the movant has met its burden, to survive summary judgment the "nonmovant must show through specific evidence that a triable issue of fact remains on issues on which [s]he bears the burden of proof at trial." *Warsco v. Preferred Tech. Group,* 258 F.3d 557, 563 (7th Cir.2001); *see also Celotex Corp.,* 477 U.S. at 322–24, 106 S.Ct. 2548. "The nonmovant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; it must go beyond the pleadings and support its contentions with proper documentary evidence." *Chemsource, Inc. v. Hub Group, Inc.,* 106 F.3d 1358, 1361 (7th Cir.1997).

This Court must nonetheless "view the record and all inferences drawn from it in the light most favorable to the [non-moving party]." *Holland v. Jefferson Nat. Life Ins. Co.,* 883 F.2d 1307, 1312 (7th Cir.1989). In doing so, this Court is not "required to draw every conceivable inference from the record—only those inferences that are reasonable." *Bank Leumi Le–Israel, B.M. v. Lee,* 928 F.2nd 232, 236 (7th Cir.1991). Therefore, if the record before the court "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of material fact exists and, the moving party is entitled to judgment as a matter of law. *McClendon v. Indiana Sugars, Inc.,* 108 F.3d 789, 796 (7th Cir.1997) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). However, in ruling on a motion for summary judgment, the court may not weigh the evidence or resolve issues of fact; disputed facts must be left for resolution at trial. *Anderson v.* *Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## I. GREAT WEST IS NOT ENTITLED TO CONTROL DEKEYSER'S DEFENSE.

■ Generally, where the insurer has the duty to defend, the insurer has the right to assume control of the litigation. *Preferred America Ins. v. Dulceak,* 302 Ill.App.3d 990, 235 Ill.Dec. 974, 706 N.E.2d 529 (1999); *Waste Management, Inc. v. International Surplus Lines Insurance Co.,* 144 Ill.2d 178, 161 Ill.Dec. 774, 579 N.E.2d 322 (1991). An insured typically has little incentive (relative to the insurer) to limit losses from litigation since it is the insurer who usually pays out any judgment rendered against the insured. The purpose of having insurers control litigation is to give insurers a means of protecting their financial interest and give the defense counsel an incentive to fight against unwarranted liability claims. *Id.* When the insurer retains the attorney to defend the insured, the attorney represents both the insured and the insurer in furthering the interests of each. *Id.* At times, this dual representation can pose a conflict of interest and can lead to an attorney behaving in an inappropriate and unethical manner. *See, e.g., Montanez v. Irizarry–Rodriguez,* 273 N.J.Super. 276, 641 A.2d 1079 (1994). If a conflict does arise, the attorney is ethically prohibited from continuing to represent both the interests of the insured and the insurer unless certain steps are taken. These steps include making full and frank disclosure to the clients and obtaining their consent to continue their representation. *Rogers v. Robson, Masters, Ryan, Brumund & Belom,* 74 Ill. App.3d 467, 30 Ill.Dec. 320, 392 N.E.2d 1365 (1979). Ideally, if there is a conflict over the representation, litigation over litigation can be avoided by the insurer and the insured finding an attorney whom both

sides find satisfactory. However, in certain cases, a court can find that an insured is entitled to find their own attorney, and the insurer is still required to pay for that attorney. Dekeyser argues that this is one of those cases.

■ Dekeyser begins by pointing out their disapproval over the strategies pursued by Great West's appointed counsel. Dekeyser argues that Great West's attorney moved to dismiss all of the contractual cross-claims in the Camp Case. They allege that this was a means of dismissing the covered claims and leaving Dekeyser out to dry to defend the remaining claims. (Doc. 119 at 9.)

Dekeyser is lucky that we do not agree with them. If indeed Dekeyser was correct that they had been left to defend the remaining claims then it would have to follow that Great West had no duty to indemnify Dekeyser.[1] However, the duty to defend is broader than the duty to indemnify and Great West must continue to defend Dekeyser if there is any possibility that Great West could be required to indemnify Dekeyser for any part of the Camp Case. *Outboard Marine Corp. v. Liberty Mutual Ins.*, 154 Ill.2d 90, 180 Ill.Dec. 691, 607 N.E.2d 1204 (1992). In this case, Great West has not brought a claim alleging that they have no duty to defend Dekeyser and has not sought summary judgment on their claim that they have no duty to indemnify Dekeyser. As a result, there is no immediate threat that Dekeyser could be left to defend the remaining claims.

Furthermore, any good defense attorney should try to get dismissible claims dismissed and succeeding is hardly grounds for accusing an attorney of not acting in the insured's best interest or for throwing out an insurer's right to control litigation.

■ Dekeyser also makes an estoppel argument which is unfounded. Estoppel is available in two different kinds of insurance cases. In the first, an insurer does not notify the defendant that it intends to deny coverage until after the insurer has begun to defend the underlying case. The insured relies on the insurer's defense to the insured's detriment on the issue of coverage. In such cases, an insured can argue that they have suffered prejudice and the insurer can be estopped from asserting a coverage defense. *Western Cas. & Sur. Co. v. Brochu*, 105 Ill.2d 486, 86 Ill.Dec. 493, 475 N.E.2d 872 (1985). In such situations an insurer may seek a declaratory judgment as to its obligations and rights or defend the insured under a reservation of rights before the insured suffers any prejudice. *Fidelity & Cas. Co. of New York v. Envirodyne Engineers, Inc.*, 122 Ill.App.3d 301, 77 Ill.Dec. 848, 461 N.E.2d 471 (1983). Great West sent a reservation of rights letter to Dekeyser shortly after Dekeyser was sued in the Camp Case. As a result, Dekeyser has not argued that they were prejudiced because they were not informed that Great West may deny coverage. Accordingly, this form of estoppel is not available to Dekeyser.

■ In the second less common scenario, the insurer has a conflict of interest with the insured. Even though the insurer has informed the insured that they may deny coverage at a later date, the insurer does not inform the insured of the conflict of interest. The underlying case proceeds and the insured suffers some form of prejudice at trial because of a conflict of inter-

---

[1]. When an insurer has no duty to defend the insured as a rule they have no obligation to indemnify them for any loss. *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill.2d 384, 189 Ill.Dec. 756, 620 N.E.2d 1073 at 1081 (1993).

est that was never brought to the insured's attention. *Utica Mutual Ins. Co. v. David Agency Ins., Inc.*, 327 F.Supp.2d 922 (N.D.Ill.2004). Generally, the principle of estoppel in the insurance contexts acts as a deterrent to the insurer and protects the insured. *Brown Mach. Works & Supply Co., Inc. v. Insurance Co. of North America*, 659 So.2d 51 at 58 (Al.1995). In cases such as this, estoppel acts to deter insurance companies from hiding a conflict of interest and then laying out the facts in an underlying case. *Utica*, 327 F.Supp.2d 922. Without estoppel, an insurer's appointed counsel would have only her ethical obligations to prevent her from laying out the facts to the insurer's advantage. And when it came time to contest coverage, it would be too late for the insured to argue that they are entitled to coverage because the facts would have already been laid in a judicial setting where the insured lacked independent representation.

■ Dekeyser argues that they are entitled to this second form of estoppel. However, no findings of fact have occurred in the Camp Case and trial is still, at the very least, six months away. Neither Dekeyser, nor TNT and Trelleborg (who both aggressively support Dekeyser in this argument) have cited a case where a Court found in a declaratory action for control of pending litigation that the insured had already been prejudiced long before the underlying case proceeded to trial. Even if an insurer has put forward an improper defense, Illinois Courts have held that an insured does not suffer any prejudice from the insurer's incorrect defense, as long as the wrong is righted before trial. *King v. Aetna Ins. Co.*, 31 Ill.App.2d 462, 176 N.E.2d 689 at 691 (1961). Furthermore, to invoke the estoppel doctrine, the insured has the burden of showing that it has suffered prejudice from the insurer's provided defense. *Utica*, 327 F.Supp.2d at 928; *Md. Casualty Co. v. Peppers*, 64 Ill.2d 187, 355 N.E.2d 24 at 29 (1976).

Great West stated in their motion for summary judgment that Dekeyser has not suffered any prejudice, and Dekeyser in their response does not provide any evidence from which this Court could conclude that Dekeyser has already suffered prejudice. In a motion for summary judgment, once the movant has met their burden the nonmovant (Dekeyser) "must show through specific evidence that a triable issue of fact remains on issues on which [s]he bears the burden of proof at trial." *Warsco*, 258 F.3d at 563; *see also Celotex Corp.*, 477 U.S. at 322–24, 106 S.Ct. 2548. Dekeyser has not brought forward any specific evidence other than allegation made in letters by counsel that they have suffered any prejudice. Accordingly, they have not met the burden necessary to invoke the estoppel doctrine.

Despite the failure of Dekeyser's estoppel argument, there still exists a potential conflict in this case which bars Great West's appointed counsel from controlling the litigation. The conflict arises out of the Great West Policy. The Policy denies liability coverage for bodily injuries to "employees" of Dekeyser. Specifically, The Great West Policy states that "[t]his insurance does not apply to any of the following: ... Bodily injury to: An 'employee' of any 'insured' arising out of and in the course of ... employment." (Doc 69 Exb. 5 at 59.) If Ms. Camp is considered a Dekeyser employee and this exception applies then Dekeyser is not entitled to coverage of any liability sustained in the Camp Case. However, there is an exception to this exception. The Policy also states that "[f]or this exclusion only, 'employee' does not include a 'leased worker' or a 'temporary worker.' "

Dekeyser feels that Camp was a "leased worker" and thus they are covered by the Great West Policy for any injuries which she sustained. Great West, on the other

hand, may seek to avoid liability by having Camp labeled as an "employee" rather than a "leased worker," thus preventing Dekeyser from receiving coverage.

 Under Illinois law, to determine whether there is a conflict which would prohibit Great West's selected counsel from representing Dekeyser, the court must compare the allegations of the underlying complaint against the insured to the terms of the insurance policy at issue. *American Family Mutual Ins. Co. v. W.H. McNaughton Builders, Inc.,* 363 Ill.App.3d 505, 300 Ill.Dec. 234, 843 N.E.2d 492 (2006). If, in the underlying suit, insurer-retained counsel would have the opportunity to shift facts or "lay the groundwork" in a way that takes the case outside the scope of policy coverage, then the insured is not required to defend the underlying suit with insurer-retained counsel. *Id.; Clemmons v. Travelers Insurance Co.,* 88 Ill.2d 469, 58 Ill.Dec. 853, 430 N.E.2d 1104 (1981). The test for whether a relevant conflict of interest exists between insured and insurer is if, in comparing the allegations of the complaint to the terms of the policy, the insurer's interests would be furthered by providing a less than vigorous defense to the allegations. *American Country Inc. Co. v. Williams,* 339 Ill. App.3d 835, 274 Ill.Dec. 857, 791 N.E.2d 1268, 1276 (2003).

Dekeyser and Great West may disagree on Camp's status under the Great West insurance contract, but Great West argues that their counsel will not have an opportunity to influence the facts surrounding Camp's employment status in the underlying Camp Case. After all, Camp's status under the Great West Insurance Policy is not up for discussion in the Camp Case. Indeed, Dekeyser's insurance has no place in the Camp Case and the trier of fact would not have an opportunity to determine Camp's employment status in the Camp Case.

Here, as the law requires, it is important to turn to the complaints filed in this case. Both TNT and Trelleborg have leveled complaints against Dekeyser for contributory negligence for failing to properly train and instruct Ms. Camp. Specifically, they argue that Camp was employed by Dekeyser and as her employer failed in their responsibility to properly train Camp to check if it was safe to open the doors of a trailer. Such training they allege could have prevented her injuries.

A healthy defense to these claims which Dekeyser could raise to Trelleborg and TNT's allegations is as follows: Dekeyser was not Camp's employer but instead leased her services from her real employer—TLC. It was not Dekeyser's responsibility to train Ms. Camp because they were not her employer. Since they had no duty to train her, Dekeyser is not contributorily negligent. An attorney, appointed by Great West, might not be inclined to lay the factual groundwork for such a defense because such an approach to the litigation could also lay the factual groundwork from which Great West may not be able to deny coverage. If indeed Camp was a leased worker then Great West would have a more difficult time denying coverage under the insurance policy. While there are many issues Great West and Dekeyser should agree on, such as minimizing the extent of Camp's injuries or arguing that TNT and Trelleborg are primarily liable for her injuries, this area of Camp's employment status could easily rise to the forefront in the Camp Case. If this happened, Great West's appointed counsel would certainly have to choose between laying the groundwork for arguing that Dekeyser leased Ms. Camp's services and laying the groundwork for arguing that Dekeyser employed Ms. Camp. Illinois law requires that the insured have the right to appoint an independent counsel if the insurer's appointed counsel will face a choice

between laying the groundwork for the insurer denying coverage or the insured defending a claim. *American Family Mutual,* 363 Ill.App.3d 505, 300 Ill.Dec. 234, 843 N.E.2d 492. Thus, while Great West's counsel has not prejudiced Dekeyser by defending Dekeyser so far, the specter of conflict looms over the horizon. This Court holds that it is best to avoid such a conflict by having independent counsel appointed rather than wait until prejudice has been suffered by the defendant.

Before this issue can be put to rest, there is still a question of how this Court should proceed. Dekeyser's current counsel has not brought their own motion for summary judgment in this case, nor have they brought a complaint seeking a declaration that they are entitled to control the litigation in the Camp Case. Instead they have brought a frivolous "Motion for Declaration of Estoppel" which this Court has stricken. This Court has been more than fully briefed on this issue and has reached the conclusion that a conflict between Dekeyser and Great West would preclude Great West from controlling the litigation. It stands to reason though that if one party is not entitled to control the litigation then the other party is entitled to control the litigation. Furthermore, since Dekeyser might not be covered under the Great West Policy, Dekeyser's self appointed counsel still has every incentive to limit Great West's and Dekeyser's potential liability in the Camp Case. Consistent with this reasoning, the Court would anticipate that Great West would concede the issue and acquiesce in the appointment of independent counsel at its expense to represent Dekeyser in the Camp Case.

Lastly, this Court's order should not be construed as a release absolving Dekeyser

from any remaining duties they may owe to Great West. For example, Dekeyser could still have a duty to cooperate with Great West or be required to receive Great West's approval for any settlement. Such a duty, if it exists, could be enforced under Illinois law. *Employers Reinsurance Corp. v. E. Miller Ins. Agency, Inc.,* 332 Ill.App.3d 326, 265 Ill.Dec. 943, 773 N.E.2d 707 (2002). Dekeyser should be mindful of such a potential duty while proceeding with the litigation and considering any settlement. In so doing the Court hopes that Dekeyser and Great West can avoid a third unnecessary level of litigation in this case.

## II. GREAT WEST HAS NO DUTY TO INDEMNIFY TRELLEBORG OR TNT

While neither TNT or Trelleborg are named in the insurance policy between Great West and Dekeyser, both feel they are entitled to coverage under the Great West Policy. They both argue that there is a coverage extension provision in the Great West Policy which provides for reasonable attorney fees and litigation expenses for liability assumed by a party other than a named insured.[2] TNT and Trelleborg are essentially asking that Great West provide for attorneys to not just defend against Camp's claims against them, but also to bring a suit for indemnification against Great West's insured— Dekeyser.

First, it should be noted that this provision provides for reasonable attorney's fees and litigation expenses, not for indemnification. As a result this Court can not stretch this coverage extension to provide for indemnification for any judgment ren-

---

**2.** Trelleborg and TNT also attempt to stretch Dekeyser's estoppel argument to assert that it is too late for Great West to deny Trelleborg and TNT coverage. As already noted, Dekeyser's estoppel argument lacks merit. Accordingly, Trelleborg and TNT are also not entitled to coverage under the principle of estoppel.

dered against TNT or Trelleborg. The only issue is whether the coverage extension imposes a duty on Great West to provide TNT and Trelleborg with a defense in the Camp Case.

The Great West Policy states as follows: Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an "insured" are deemed to be expenses we shall pay for provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which liability coverage applies are alleged. (Great West Policy at 58.)

TNT and Trelleborg argue that the litigation which they now face in the Camp Case is liability assumed in an "insured contract." An "insured contract" is defined in the Great West Policy as "that part of any other contract or agreement pertaining to your business" ... under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party.

The extension covering "insured contracts" in this case is slightly different than the typical insurance contract extension. In the modern transactional economy a company may face many contracts in the course of business which contain indemnification clauses. These clauses increase a business's liability risks. Companies can receive coverage for the risk assumed in these contracts through the insured contract extension which is now part of standard general liability insurance. Douglas R. Richmond, *Expanding Liability Coverage: Insured Contracts*

*and Additional Insureds*, 44 Drake L.Rev. 781 (1996). Provided that a contract with a third party fits within the definition of an "insured contract" in the respective policy, insurance companies are now providing coverage endorsements which provide coverage for any liabilities which the insured might incur through contracts with third parties. *See, e.g., Loyola Marymount University v. Hartford Accident & Indemnity Co.*, 219 Cal. App.3d 1217, 271 Cal.Rptr. 528 (Cal.Ct. App.1990).

The Great West Policy is slightly different. It does not provide coverage for all liabilities which Dekeyser might incur through insured contracts. Instead it provides for "reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an 'insured'" provided that the expenses are the result of litigation arising out of the insured contract. (Great West Policy at 58.) This provision allows for Dekeyser to be compensated for attorney's fees and litigation expenses levied against them by a third party for litigation that arises out of an insured contract.

■ The first question that this Court must address is whether an insured contract exists between Dekeyser and either TNT or Trelleborg. This question must be asked because the Great West Policy only provides coverage for Dekeyser if the third parties defense has been assumed in an insured contract. TNT points to a Master Agreement for Transportation Services between CTI (TNT's predecessor) and Dekeyser (the "TNT–Dekeyser Transportation Agreement") which established the business relationship between TNT and Dekeyser. (Doc 94 at Ex. D.) This contract states that the carrier (Dekeyser) will be responsible for any claims for personal injury of the carrier's employees "related directly or indirectly to the provision

of Services hereunder. . . ." (Doc. 94 Ex. D at 6.) TNT argues that this language in the TNT–Dekeyser Transportation Agreement constitutes an "insured contract" because under this language Dekeyser has assumed the tort liability of TNT for any injuries sustained by Lola Camp.[3]

However, it is not entirely clear that Dekeyser has assumed TNT's liabilities through the TNT–Dekeyser Transportation Agreement. The TNT–Dekeyser Transportation Agreement also states that "[TNT] shall be responsible for and shall indemnify and save harmless [Dekesyer] . . . for any and all loss, claim, or damage . . . resulting from . . . the negligent act . . . of [TNT]." (Doc 94 at Ex. D.) In the underlying Camp Case there is certainly a debate over whose negligence led to Ms. Camp's injuries. If TNT is found negligent in the Camp Case then it follows that TNT and not Dekeyser would be liable to provide indemnification under the Agreement. On the other hand, TNT could win this argument at trial in the Camp Case and could attempt to recover attorney's fees and litigation expenses from Dekeyser under the agreement. At that point, Dekeyser could seek coverage for those expenses under the Great West Policy. At this pretrial stage of litigation, it is unknown if Dekeyser will be required to assume any liabilities under the insured contract.

Nevertheless, even if this Court were to assume that TNT would carry the day at trial, there is still a question of whether TNT is entitled to the cart before it sees the horse. That is to say, since TNT could be entitled to attorney's fees and litigation expenses that could be paid by Great West, can TNT presently require Great West to provide for TNT's attorneys?

Under Illinois law, the answer is no. Illinois law does not treat a third party that could ultimately receive payment under a contractual liability coverage endorsement as a third party as being entitled to the same duty to defend that a named insured receives. In *Alliance Syndicate, Inc. v. Parsec, Inc.*, 318 Ill.App.3d 590, 251 Ill.Dec. 861, 741 N.E.2d 1039 (2000), Alliance—the insurer—provided insurance to Parsec. The insurance included an insured contract extension. This extension insured Parsec against potential liabilities which Parsec might assume through contracts in the course of their business. CSX was a railroad company that did business with Parsec. CSX was not a named insured under the Alliance policy, but did enter into an insured contract with Parsec. CSX and Parsec were both sued for personal injuries sustained by a railroad worker. After settlement in the underlying claim, Parsec brought a declaratory judgment action seeking, among other claims, to impose on Alliance Insurance a duty to defend CSX. Despite the settlement in the underlying case the Court made the broad ruling that Alliance had no duty to CSX simply because CSX had an insured contract with Parsec. The Court held that for CSX to receive the benefit of Alliance's duty to defend, CSX

---

**3.** Trelleborg makes a similar argument, but fails to provide the Court with an agreement between Trelleborg and Dekeyser which this Court might consider an "insured contract." Trelleborg states in their brief that Dekeyser agreed to provide coverage and states that this obligation appears in Section 7 of a "Master Transportation Agreement," but nowhere in the exhibits presented to the Court is there an agreement between Trelleborg and Dekeyser. The only "Master Transportation Agreement" which Trelleborg presents is the same agreement which TNT relies upon between CTI (TNT's predecessor) and Dekeyser, not between Trelleborg and Dekeyser. Accordingly, since Trelleborg does not have an insured contract, Trelleborg has no leg to stand on when arguing that they are entitled to compensation for fees under the "insured contract" exception in the Great West Policy.

must be a named insured in the Alliance policy.

This case is slightly different: Great West is not on the hook for all liability assumed by Dekeyser in its insured contract—only for attorney's fees. In addition, the parties in the underlying case have not reached a settlement that they are attempting to push onto the insurer. Nevertheless, the principle laid down by Illinois Courts still applies. The fact that TNT could receive the benefit from an "insured contract" does not automatically impose a duty on Great West to defend TNT.

Lastly, while this Court's position is required by Illinois law, it also makes sense from a policy perspective. This form of supplemental insurance that covers future contracts which a client might make with third parties is rather unusual. This insurance allows an insured to expand the pool of risk that an insurer faces by adding new contracts to their business. The amount of risk that an insurer is taking on could change at any moment by their clients taking on new contracts without the insurer's knowledge or consent. Despite a fluid risk pool, this form of insurance provides coverage for industries where parties regularly contract over issues of potential liability such as the construction industry. *Expanding Liability Coverage*, 44 Drake L. Rev 781. Imposing a duty to defend a third party that is not named in an insurance policy would have consequences. Not only would such a regime increase the costs of providing such insurance, but it would also make a form of insurance which already has an uncertain pool of risk even more uncertain. Without clear statutory or judicial authority which establishes such a position, this Court is not inclined to break ground on imposing such a regime.

## CONCLUSION

IT IS THEREFORE ORDERED that Great West's Motion for Summary Judgment is DENIED as to Count III and GRANTED as to Count IV. Consistent with this Order, it is anticipated that Great West will acquiesce in the appointment of independent counsel for Dekeyser who will have the right to control the litigation in the underlying case.